**DOMINO SUGAR CORPORATION,**
Plaintiff–Appellant,

v.

**SUGAR WORKERS LOCAL UNION 392 OF the UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, an Unincorporated Association, Defendant–Appellee.**

No. 93–1449.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 30, 1993.

Decided Nov. 30, 1993.

Jeffrey Peabody Ayres, Venable, Baetjer & Howard, Baltimore, MD, argued (Valerie Floyd Portner, on brief), for plaintiff-appellant.

Richard David Zeff, Pfeifer, Fabian & Zeff, P.A., Baltimore, MD (Julie T. Sweeney, on brief), for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and HAMILTON, Circuit Judges.

## OPINION

HAMILTON, Circuit Judge:

Domino Sugar Corporation (the Company) appeals the district court's Fed.R.Civ.P. 12(b)(6) dismissal, without prejudice, of its complaint alleging that Sugar Workers Local Union (the Union) breached the no-strike provision in their Collective Bargaining Agreement (CBA). The district court granted the Union's Rule 12(b)(6) motion on the basis that the CBA required the Company to submit its dispute to arbitration before seeking judicial review. Finding no error, we affirm.

## I

Because this appeal involves the interpretation of the CBA between the Company and the Union, it is helpful to begin with a discussion of the relevant provisions within that agreement. Article V of the CBA, entitled "Strikes, Stoppages, and Lockouts," discusses the consequences of an employee strike or work stoppage. Specifically, paragraph 5.1 provides:

> It is the intent of the parties to this Agreement that the procedures herein shall serve as a means for peaceful settlement of all disputes that may arise between them, and between the Company and its employees.

(J.A. 19). Paragraph 5.2 requires the Union to employ "reasonable efforts to avoid and end [a] strike . . . ." (J.A. 20). Paragraph 5.4 provides:

> An employee who . . . participates in a strike . . . during the term of this Agreement will be subject to discharge, or other disciplinary action by the Company. If requested by the Union, such disciplinary action will be processed as a grievance according to the grievance procedure set forth in this Agreement.

*Id.*

The grievances provision within the CBA (Article XV) provides:

> ¶ 15.1 When a difference or complaint arises between the Company and the Union, or any employee or employees, there shall be no suspension of work on account of such dispute. . . . An earnest effort shall be made to settle immediately a difference or complaint by the following successive steps:
>
> > (a) by conference between the aggrieved employee and the foreman. . . .
> >
> > (b) by conference between the Union Grievance Committee . . . and the Refinery Employee Relations Manager. . . .
> >
> > (c) by conference between representatives of the [Union] on the one hand, and representatives of the Company on the other hand. . . .
>
> ¶ 15.2 The Company shall give its decision on a grievance at the earliest possible moment, and in no event later than the following periods of time:
>
> > Step (a)—Twenty-four hours
> >
> > Step (b)—Three days
> >
> > Step (c)—Five days
>
> ¶ 15.3 The Company's answer at Step (b) and (c) shall be in writing.

If the grievance process does not adequately resolve the dispute, the CBA also provides for binding arbitration. Specifically, Article XVI, states:

> ¶ 16.1 If the dispute shall not have been satisfactorily settled, the Union may demand arbitration as follows:

(a) If the grievance shall have not been satisfactorily settled the Union may demand arbitration by notifying the Company in writing. . . .

(b) If the Union demands arbitration as provided above the arbitrator shall be selected in accordance with the rules of the American Arbitration Association. . . .

(J.A. 29). Notably, the CBA did not specifically indicate that the Company could request a grievance conference or arbitration. However, nothing in the CBA precluded the Company from pursuing these procedures.

On January 26, 1993, the employees of the Company conducted a work stoppage at the Company's Baltimore sugar refinery. Believing that the Union did not satisfy its obligation to use "reasonable efforts to avoid or end such ... stoppage," (J.A. 20), the Company, on the same day, filed suit against the Union in the United States District Court for the District of Maryland. Without first filing an answer, the Union filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). In its motion, the Union asserted that the Company failed to state a claim because it failed to exhaust the grievance and arbitration procedures within the CBA before filing suit.

Without allowing extrinsic evidence to establish whether the parties intended the grievance and arbitration procedures within the CBA to apply to the Company's complaints, the district court granted the Union's motion and dismissed the Company's complaint without prejudice. The district court reasoned that, without an express limitation on the scope of arbitrable disputes, the presumption in favor of arbitrability requires even the Company to pursue arbitration before seeking traditional judicial relief. (J.A. 12–13).

The Company now appeals the Rule 12(b)(6) dismissal of its complaint without prejudice.

## II

As a preliminary attack on the Company's appeal, the Union argues that the district court's order requiring the Company to submit its grievances to arbitration is non-final and, therefore, not subject to appellate review.

## A

The Union first contends that we lack appellate jurisdiction because the district court dismissed the Company's complaint *without prejudice*. Because such an order does not preclude the losing party from filing a new complaint, the Union concludes that the order cannot be considered a "final order" within the meaning of 28 U.S.C. § 1291. Thus, the Union believes we must dismiss the Company's appeal as interlocutory. We disagree.

The courts are apparently divided on whether an order which dismisses a complaint without prejudice qualifies as final and subject to appeal. Some courts hold that such orders are appealable as a matter of right. *See, e.g., Davis Forestry Corp. v. Smith,* 707 F.2d 1325 (11th Cir.1983); *Elfenbein v. Gulf and Western Industries, Inc.,* 590 F.2d 445 (2d Cir.1978). These courts reason that such a dismissal terminates the action, thereby entitling the losing party to appeal.

Other courts reject this view, holding that "[a]n order which dismisses a complaint without expressly dismissing the action is [generally] not ... an appealable order." *Ruby v. Secretary of the United States Navy,* 365 F.2d 385, 387 (9th Cir.1966). *See also, Borelli v. City of Reading,* 532 F.2d 950, 951 (3d Cir.1976); *Azar v. Conley,* 480 F.2d 220, 223 (6th Cir.1973). The courts adopting this rule reason that "the plaintiff may be able to amend his complaint to cure whatever deficiencies had caused it to be dismissed." *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 463 (7th Cir.1988). However, under this approach, if "the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case, the order dismissing the complaint is final in fact and [appellate jurisdiction exists]." *Id.*

We find the latter view more persuasive. Under this approach, an appellate court may evaluate the particular grounds for dismissal in each case to determine whether the plaintiff could save his action by merely amending

his complaint. When such action would permit the plaintiff to continue the litigation in the district court, we believe the plaintiff should not be allowed to appeal the dismissal without prejudice. Such a rule better serves judicial economy than one providing an appeal of right. Thus we hold that a plaintiff may not appeal the dismissal of his complaint without prejudice unless the grounds for dismissal clearly indicate that "no amendment [in the complaint] could cure the defects in the plaintiff's case." *Id.*

■ Applying this rule to the present case reveals that the district court's order nonetheless qualifies as a final order subject to appeal. Specifically, the district court's order dismissed the Company's complaint "on account of [the Company's] failure to exhaust contractual remedies." (J.A. 13). The clear import of this order required the Company to pursue remedies within the CBA before filing suit in court. In other words, the district court essentially made a final ruling that the Company had to proceed to arbitration before seeking judicial relief. Thus, "the grounds of the dismissal ma[de] clear that no amendment could cure the defects in [the Company's] case." *Coniston Corp.*, 844 F.2d at 463. Accordingly, the mere fact that the district court dismissed the Company's complaint without prejudice does not render the order interlocutory and not subject to appeal.

### B

■ Alternatively, the Union argues that orders requiring parties to submit their disputes over collective bargaining agreements to arbitration are interlocutory and, therefore, not subject to appeal. In support, the Union relies on *Stedor Enterprises, LTD. v. Armtex, Inc.*, 947 F.2d 727, 728 (4th Cir. 1991), where we recognized that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, reflects "a strong congressional policy against appeals which delay the onset of arbitration." By analogy, the Union asserts that this policy should also apply in the context of collective bargaining agreements.

Under the FAA, 9 U.S.C. § 16(b)(2), "an appeal may not be taken from an interlocutory order directing arbitration to proceed under section 4 of this title." In *Stedor*

*Enterprises, LTD.*, 947 F.2d at 730, we described Congressional intent behind this provision:

> Congress sought to prevent parties from frustrating arbitration through lengthy preliminary appeals by providing that, "if the district court determine[s] that arbitration is called for, the court system's interference with the arbitral process will terminate then and there, leaving the arbitration free to go forward."

*Id.* (*quoting* D. Siegel, Practice Commentary, 9 U.S.C.A. at 219 (West Supp.1991)). Thus, we have recognized that the FAA precludes litigants from immediately appealing orders compelling them to submit their disputes to arbitration *unless* "arbitration represent[ed] the *only* issue before the district court." *Humphrey v. Prudential Securities, Inc.*, 4 F.3d 313, 317 (4th Cir.1993) (emphasis added).

We find this analogy highly persuasive and, without more, believe that it would be reasonable to apply the appealability rules which we have developed under the FAA in the context of collective bargaining agreements. Under our recent decision in *Humphrey*, the arbitration question in the present case apparently qualifies as an "embedded" issue in that the Company presented that issue along with others for the district court to resolve. According to our interpretation of the FAA, 9 U.S.C. § 16, the order compelling the Company to submit its dispute to arbitration would, therefore, qualify as interlocutory and not subject to immediate appeal. *Humphrey*, 4 F.3d at 318.

■ However, the FAA specifically provides that "*nothing* herein contained shall apply to contracts of employment of ... any ... class of workers engaged in ... interstate commerce." 9 U.S.C. § 1 (emphasis added). Applying this section, we have consistently recognized that the FAA does not apply to disputes stemming from collective bargaining agreements. *Sine v. Local No. 992 Intern. Broth., Etc.*, 644 F.2d 997, 1002 (4th Cir.1981); *United Electrical, Radio & Machine Workers of America v. Miller Metal Products*, 215 F.2d 221, 224 (4th Cir.1954). Other courts agree. *United Food and Com-*

*merce Workers, Local Union No. 7R v. Safe-way Stores, Inc.,* 889 F.2d 940, 944 (10th Cir.1989); *American Postal Workers Union v. U.S. Postal Serv.,* 823 F.2d 466, 473 (11th Cir.1987).

Thus we face the difficult question of whether to apply congressional policy expressed in the FAA to an admittedly analogous situation even though we previously recognized that the FAA does not apply to disputes concerning collective bargaining agreements. Fortunately, we need not resolve this conundrum. Assuming *arguendo* that orders compelling parties to submit their disputes over collective bargaining agreements to arbitration qualify as final and subject to appeal, we nonetheless agree with the district court that the CBA in the present case required the Company to submit its dispute to arbitration.

### III

Turning to the merits of this appeal, the Company claims that the district court erred in dismissing its complaint without prejudice. In support, the Company offers two theories, neither of which has merit. We provide our rationale with respect to each theory separately.

### A

The Company first claims the CBA is ambiguous as to whether the Company must pursue the grievance/arbitration requirements provided in Articles XV and XVI. Thus, the Company contends the district court should have considered extrinsic evidence before ruling that these requirements applied to company-generated complaints against the Union. We disagree.

■■■ In the proceedings before the district court, the Company responded to the Union's motion to dismiss by arguing that the CBA *unambiguously* excluded employer-

initiated grievances from the grievance/arbitration requirements. See, Plaintiff's Opposition to Defendant's Motion to Dismiss at 6–7 (J.A. 74–75). Specifically, the Company asserted:

A review of the grievance and arbitration provisions in the [CBA] *clearly* establishes that ... these procedures are inapplicable to the employer.... Thus, there is *no question* that this provision does not provide for employer-generated grievances.... *This is not a situation where the contract language is ambiguous, thus requiring the courts to resolve the ambiguities in favor of arbitration.*

*Id.* (emphasis added). Because the Company categorized the CBA as unambiguous before the district court and did not request that court to consider extrinsic evidence before interpreting the CBA, the Company cannot argue on appeal that the district court erred in refusing to consider extrinsic evidence. *See, e.g., Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), where the Supreme Court opined:

Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.

Accordingly, given the tack of the Company below, the district court did not err in refusing to admit extrinsic evidence for purposes of interpreting the CBA.[1]

---

**1.** In a related argument, the Company contends that the district court erred by not providing the Company leave to amend its complaint in response to the Union's motion to dismiss. This argument fails, however, because the Company never requested leave to amend. Moreover, the Company did not need leave from the district court to amend its complaint. This court recog-

nizes that, under Fed.R.Civ.P. 15(a), a complaint may be amended without leave of the court when the defendant has not filed a responsive pleading. *Smith v. Blackledge,* 451 F.2d 1201, 1202–03 (4th Cir.1971). A motion to dismiss is not a responsive pleading for the purposes of Rule 15(a). *United States v. Newbury Mfg. Co.,* 123 F.2d 453 (1st Cir.1941). Thus, the Union's motion to dis-

## B

The Company next argues in the alternative that the CBA unambiguously excluded employer-initiated grievances from the remedies provisions. In support, the Company primarily relies on two provisions within the CBA: (1) Art. V, ¶ 5.4, which provides "If requested *by the Union*, such disciplinary action [in response to an employee work stoppage] will be processed as a grievance." (emphasis added); and (2) Art. XVI, ¶ 16.1, which provides "If the dispute shall not have been satisfactorily settled, *the Union* may demand arbitration." (emphasis added). Because these provisions only provide for Union-initiated complaints, the Company concludes that the CBA precludes it from utilizing the arbitration procedures contained in the CBA. We disagree.

The Supreme Court has consistently articulated a strong presumption in favor of arbitrability in labor cases. Thus, when a labor agreement contains an arbitration provision, the Supreme Court requires us to find in favor of arbitrability "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (*quoting United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 583–84, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)) (emphasis added). Thus, we must interpret a collective bargaining agreement as imposing arbitration requirements on an employer unless "there is an express, flat limitation that arbitration boards should consider *only* employee grievances." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 243, 82 S.Ct. 1318, 1322, 8 L.Ed.2d 462 (1962) (emphasis added).

In *Atkinson*, the Supreme Court applied these principles to a collective bargaining agreement which the Company considers to be similar to the CBA. There, the collective bargaining agreement did not specify any specific procedures for arbitrating employer-initiated grievances. Instead, the agreement provided that the arbitration board "shall consider *only* individual or local employee or local committee grievances...." *Id.* at 243, 82 S.Ct. at 1322. (emphasis added). The Court found that the agreement did not require the employer to submit its disputes to arbitration, reasoning:

> There is not a word in the grievance and arbitration article providing for the submission of grievances by the company. Instead, there is the express, flat limitation that arbitration boards should consider only employee grievances.

*Id.*

The Company in the present case argues that *Atkinson* should control, reasoning that its CBA contains "not a word in the grievance and arbitration article for submission of grievances by the company." *Id.* Specifically, because the grievance procedures outlined in the CBA only refer to Union-initiated grievances, the Company claims that the CBA does not require it to submit its grievances to arbitration. We disagree.

We previously addressed a remarkably similar argument as the Company's in *H.K. Porter Co. v. Local 37, United Steelworkers of America*, 400 F.2d 691 (4th Cir.1968). In that case, the collective bargaining agreement "contain[ed] no clause excluding company claims against the union" from the arbitration requirement. *Id.* at 693. Instead, that agreement required "all disputes [to] be settled in the manner outlined in [the agreement]." *Id.* However, the procedures outlined within the agreement only referred to employee-generated complaints. Thus, the union argued "because [the arbitration provision] does not outline a manner for settling employer grievances, the [arbitration] clause creates no independent right to arbitrate" for the employer.

In rejecting the union's claim and holding that the employer could pursue arbitration, we noted that although the obligation to arbitrate "must be found in the collective bargaining agreement, ... all doubts must be resolved in favor of arbitration [and] ...

miss did not preclude the Company from amending its complaint without leave of court.

[o]nly the most forceful evidence of a purpose to exclude [a] claim from arbitration can prevail." *Id.* (citations omitted). We added:

> The procedural devices of [the arbitration provision] do not explicitly exclude arbitration of company grievances against the Union. Exclusion by implication, and the consequent nullification of those provisions which indicate the parties' intention to arbitrate, is contrary to our national labor policy.

*Id.* at 695. Thus, even though the collective bargaining agreement did not specifically provide for employer-initiated complaints, we nonetheless found that the employer could avail itself of the arbitration proceedings within the agreement.

We think our decision in *H.K. Porter* compels a conclusion that the CBA in the present case required the Company to submit its grievances to arbitration. First, although the CBA only refers to Union-initiated grievances, it does not contain an "express provision *excluding* [employer] grievance[s] from arbitration." *H.K. Porter*, 400 F.2d at 695 (quoting *United Steelworkers*, 363 U.S. at 585, 80 S.Ct. at 1354) (emphasis added). Moreover, Art. V, ¶ 5.1 of the CBA provides:

> It is the intent of the parties to this Agreement that the procedures herein shall serve as a means for peaceful settlement of *all* disputes that may arise between *them*, and between the Company and its employees.

(J.A. 19) (emphasis added). We believe this provision expresses an intent to require both the Union *and* the Company to utilize the grievance/arbitration provisions within the CBA.[2] Accordingly, the district court properly found that the CBA required the Company to submit its disputes to arbitration.

---

**2.** The Company attempts to distinguish *H.K. Porter*, arguing that case was dismissed on a summary judgment motion, whereas the district court in the present case dismissed the Company's complaint on a Rule 12(b)(6) motion. The Company claims that determining whether a collective bargaining agreement requires a particular party to submit to arbitration can only be decided on summary judgment motions, after the parties have had an opportunity to introduce extrinsic evidence regarding the terms within CBA. We disagree.

## IV

For the reasons stated herein, we affirm the district court's Rule 12(b)(6) dismissal of the Company's complaint.

**AFFIRMED.**

---

We have previously discussed the strong presumption in favor of arbitrability and the requirement that employers can avoid arbitration *only* when the CBA contains "an express, flat limitation that arbitration boards should consider *only* employee grievances." *Atkinson*, 370 U.S. at 243, 82 S.Ct. at 1322. Absent such an "express, flat limitation" within the CBA, we believe a Rule 12(b)(6) dismissal is an appropriate method to quickly dispose of judicial interference with the arbitration process.