46 F.3d 356
 129 Lab.Cas. P 33,205, 2 Wage & Hour Cas.2d
(BNA) 1050
 Joseph HENNESSEY; Richard L. Ale; Thomas Bloom; Jerry
Cochran; Karen Geddings; Vern Geddings; John Hough;
Johnny Hughes; Curtis Johnson; Mark Miller; Carolyn
Oxley; David Plummer; Kenneth Roosa; Danny Webb; Randy
Drose; John M. Holbrook; John Dorgan; Robert Allen; John
Fennell; James Davis; Gregory Wilkinson; Richard Clay;
Patrick Sartori, for themselves and in behalf of other air
traffic controllers similarly situated, Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF DEFENSE; Department of the
Navy; United States Marine Corps; D.A. Richwine,
Commanding General, Defendants-Appellees.
 No. 94-1492.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1994.
Decided Feb. 1, 1995.
 
 ARGUED: William Walter Osborne, Jr., Beins, Axelrod, Osborne, Mooney & Green, P.C., Washington, DC, for appellants. Charles Edwin Hamilton, III, Asst. U.S. Atty., Raleigh, NC, for appellees. ON BRIEF: Elizabeth J. Head, Beins, Axelrod, Osborne, Mooney & Green, P.C., Washington, DC; J. David James, Smith, Follin & James, Greensboro, NC, for appellants. Janice McKenzie Cole, U.S. Atty., Raleigh, NC, for appellees.
 Before ERVIN, Chief Judge, and HAMILTON and LUTTIG, Circuit Judges.
 Reversed and remanded by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge HAMILTON joined. Judge LUTTIG wrote a separate opinion concurring in part and dissenting in part.OPINION
 ERVIN, Chief Judge:
 
 
 1
 The only issue presented in this appeal is whether the district court had subject matter jurisdiction to hear a claim for overtime compensation filed by a group of unionized federal employees pursuant to the Fair Labor Standards Act. The district court held that it did not, and that arbitration of the grievance was required under the Civil Service Reform Act. For the reasons discussed below, we recognize federal subject matter jurisdiction over the claim and reverse the judgment of the district court.
 
 I.
 
 2
 Appellants are civilian Air Traffic Controllers employed by the United States government at the Marine Corps Air Station at Cherry Point, North Carolina. They are members of the National Air Traffic Controllers Association ("NATCA"). On July 2, 1993, these federal employees filed suit in the United States District Court for the Eastern District of North Carolina against the United States Department of Defense, the United States Department of the Navy, the United States Marine Corps, and Commanding General D.A. Richwine (collectively "the government"). The complaint alleged that the government had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Sec. 207(a)(1), by failing to compensate its employees for overtime work they had performed.
 
 
 3
 Since at least January 1967, appellants have been required to attend fifteen minute briefing sessions prior to each eight hour shift as air traffic controllers. The government does not dispute that this pre-shift briefing constitutes "hours of work" within the meaning of the applicable federal labor regulations. See 5 C.F.R. Sec. 551.412(a)(1) (requiring agencies to credit employees with "a preparatory or concluding activity [that] is closely related to an employee's principal activities, and is indispensable to the performance of the principal activities," and which totals more than ten minutes per workday).
 
 
 4
 The primary disagreement between the parties centers around the nature of the lunch period available to the employees. A policy statement issued by the Air Traffic Control Facility where they work specifies: "Civilians are guaranteed a minimum of 15 minutes for lunch." Likewise, on March 11, 1991, NATCA and the government executed a memorandum of understanding declaring that:
 
 
 5
 "Workload permitting, the [supervisor] may authorize an employee to leave the workplace to purchase food on base either for him/her self or for the remainder of the Crew. The employee shall not eat at the place of meal(s) purchase, but return to the Facility to eat."
 
 
 6
 The government contends that this meal period is not "hours of work" and that it offsets the briefing period for which the employees seek overtime compensation. The employees maintain that the meal period is not "bona fide" within the meaning of the applicable federal regulations, see 5 C.F.R. Sec. 551.411(c), in which case they are entitled to additional remuneration.*
 
 
 7
 On July 19, 1991, NATCA and the United States entered into a collective bargaining agreement that establishes a grievance procedure. Section 1(a) of the agreement defines a grievance "as any complaint ... by an employee concerning any matter relating to the employment of that employee." Section 1(c) specifically encompasses complaints concerning:
 
 
 8
 (1) the effect or interpretation, or a claim of breach of the negotiated agreement; or
 
 
 9
 (2) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment....
 
 
 10
 Finally, section 3(h) establishes that the procedure does not apply to any grievance concerning "matters relating to overtime entitlement under the Fair Labor Standards Act, as amended."
 
 
 11
 In assessing whether it had jurisdiction to resolve this dispute, the district court correctly noted that "in the absence of an [sic] clear exclusion within a labor agreement, a court should find in favor of arbitrability." The court emphasized that the crux of the parties' dispute revolved around whether the meal period available to the employees was bona fide within the meaning of 5 C.F.R. Sec. 555.411. Recognizing that the collective bargaining agreement "does not exclude disputes about 'bona fide meal periods' " from the grievance process, the court concluded that it lacked subject matter jurisdiction over the employees' claims and dismissed their complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The employees now appeal that dismissal.
 
 II.
 
 12
 The overtime provision of the FLSA requires employers to pay non-exempt employees at least time-and-a-half for any period worked in excess of forty hours per week. 29 U.S.C. Sec. 207(a)(1). As an employer, the federal government is not exempt from this requirement. See Carter v. Gibbs, 909 F.2d 1452, 1458 (Fed. Cir.), cert. denied, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). Section 216(b) expressly confers jurisdiction on federal courts to hear disputes arising under this provision.
 
 
 13
 In contrast, the Civil Service Reform Act ("CSRA") establishes that "[grievance] procedures shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. Sec. 7121(a)(1). A union may, however, preserve the FLSA remedy under the authority of Sec. 7121(a)(2), which states: "Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement."
 
 
 14
 Although there is "a strong presumption favoring arbitrability," Nolde Bros. v. Bakery & Confectionery Workers Union, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977), the grievance process is not always a unionized employee's exclusive remedy. As the Federal Circuit observed in Carter v. Gibbs, "the CSRA requires that federal employees subject to a collective bargaining agreement negotiate with their employing department or agency whether to preserve the FLSA remedy, or instead to commend FLSA claims to the bargained grievance procedures." 909 F.2d at 1458. See also O'Connell v. Hove, 22 F.3d 463 (2d Cir.1994) (noting that "the CSRA contemplates that unions unwilling to confine FLSA issues to the grievance procedures they negotiate can negotiate to preserve judicial remedies"). The Carter court rejected a claim that the grievance procedures established in a union's collective bargaining agreement were inferior to those provided in the FLSA and held that no subject matter jurisdiction existed over an FLSA pay dispute not excluded from arbitration pursuant to Sec. 7121(a)(2). Id. In Muniz v. United States, 972 F.2d 1304 (Fed. Cir.1992), the Federal Circuit again addressed the intersection between claims under the FLSA and the grievance process required by the CSRA. Muniz interpreted "Carter v. Gibbs and the precedent upon which it rests ... [as requiring] that the parties to the agreement must explicitly and unambiguously express in the words of the contract their intent to exclude the matter from the grievance and arbitration processes in order for an exclusion to satisfy section 7121(a)(2)." Muniz, 972 F.2d at 1311.
 
 
 15
 We recently addressed this issue in Domino Sugar v. Sugar Workers Local Union 392, 10 F.3d 1064 (4th Cir.1993). Deciding whether an arbitration requirement applied to employers as well as employees, this court noted "a strong presumption in favor of arbitrability in labor cases" and held that it "must interpret a collective bargaining agreement as imposing arbitration ... unless 'there is an express, flat limitation that arbitration boards should consider only employee grievances.' " Id. at 1069 (quoting Atkinson v. Sinclair Refining Company, 370 U.S. 238, 243, 82 S.Ct. 1318, 1322, 8 L.Ed.2d 462 (1962)). Significantly, we distinguished the case of Atkinson v. Sinclair Refining Company, in which the Supreme Court concluded that an employer was not limited to arbitration where the collective bargaining agreement "provided that the arbitration board 'shall consider only individual or local employee or local committee grievances.' " Domino Sugar, 10 F.3d at 1069 (quoting Atkinson, 370 U.S. at 243, 82 S.Ct. at 1322). Such language formed the necessary "forceful evidence of a purpose to exclude a claim from arbitration." Id.
 
 
 16
 The collective bargaining agreement between NATCA and the United States specifically exempted "matters relating to overtime entitlement under the Fair Labor Standards Act" from the grievance procedure it established. Although courts have demonstrated a strong preference for arbitration in the face of an ambiguous provision or in the absence of a specific limitation, the exception included in this collective bargaining agreement does not fall in these categories. Section 3(h) of the collective bargaining agreement specifically exempts from arbitration "matters relating to overtime entitlement under the Fair Labor Standards Act." Interpreting this exclusion as not preserving the jurisdiction conferred under the FLSA would essentially render a nullity the CSRA provision permitting a union to exclude causes of action from a grievance procedure, since virtually no exclusion would satisfy the requirement. Because section 3(h) of the collective bargaining agreement excluded claims "relating to overtime entitlement under the Fair Labor Standards Act," the district court erred when it dismissed the employees' claims for lack of jurisdiction.
 
 
 17
 Of course, the instant dispute requires resolution of the "bona fide meal period" issue--a matter that clearly falls within the grievance procedure established in the parties' collective bargaining agreement. The district court should, therefore, refer the lunch period question to an arbitrator and stay further proceedings in this matter until that issue is resolved.
 
 
 18
 For the foregoing reasons, we reverse the district court's dismissal of appellants' claim and remand the case for further proceedings in accordance with this opinion.
 
 
 19
 REVERSED AND REMANDED.
 
 
 20
 LUTTIG, Circuit Judge, concurring in part and dissenting in part:
 
 
 21
 The only issue in this case is whether the legal character of the employees' meal period as work or rest is a "matter relating to overtime entitlement" that can be heard in district court under the parties' collective bargaining agreement--an issue the majority decides in a single sentence, without reasoning. See ante at 360 ("Of course, the instant dispute requires resolution of the 'bona fide meal period' issue [by the arbitrator].").[1] The issue before us is not whether section 3(h) of the collective bargaining agreement exempts overtime claims from arbitration--an issue the majority discusses at length. Indeed, neither party disputes that the employees may bring overtime claims in district court under the agreement, nor could they. By its very terms, the section exempts "matters relating to overtime entitlement under the Fair Labor Standards Act, as amended." And the district court expressly so held: "[T]he agreement specifically excludes grievances concerning overtime entitlement." J.A. at 176.
 
 
 22
 Therefore, in my view, the majority has, on the one hand, devoted the lion's share of its opinion to an issue that is undisputed and, on the other, disposed of the only issue that is disputed in a single sentence. Moreover, in deciding the contested issue as it does, the majority essentially reverses the district court for doing precisely what the majority now instructs it to do. See id. at 175 (district court opinion) (declining jurisdiction over, and thus sending to arbitration, question of whether the meal periods qualify as "bona fide meal periods" within 5 C.F.R. Sec. 551.411).[2]
 
 
 23
 Addressing the issue before us, I would reverse the district court for ordering arbitration of whether the meal period is a "bona fide meal period" within the meaning of 5 C.F.R. Sec. 551.411, because I believe that this is a "matter relating to overtime entitlement" within the meaning of section 3(h). The employees claim that they are required to work in excess of eight hours a day, without overtime compensation. The employer's defense is that the employees receive a lunch break that does not qualify as time worked under the applicable regulations, and that the employees therefore only work eight hours a day. It seems self-evident that the legal characterization of the meal period as bona fide or not is a "matter relating to" the employees' claim to overtime compensation, because their entitlement to such compensation is wholly dependent upon resolution of this issue. If the meal period is bona fide, then the employees are not entitled to overtime compensation; if it is not a bona fide meal period, then they are.
 
 
 24
 By concluding otherwise, the majority effectively indulges the government's attempt to renege on its bargain, by peeling off each sub-issue necessary to the employees' overtime claim and insisting that each be heard in arbitration. Under the majority's and the government's reading of the agreement, the only "overtime entitlement" claim that the employees will be allowed to bring in district court is whether the number of hours they work each day, which must be decided by the arbitrator, is greater or less than eight. The exception of section 3(h) must be broader than this interpretation admits.
 
 
 25
 I would direct the district court not only to exercise jurisdiction over, but also to decide, the so-called "bona fide meal period" issue. In my opinion, this issue is inextricably linked, and therefore necessarily related to, the employees' claim of overtime entitlement.
 
 
 
 *
 Resolution of this factual dispute is not presently before this court, and we decline to address the merits of the employees' overtime claim
 
 
 [1]
 Presumably, the majority accepts the government's only argument, other than ipse dixit, as to why the bona fides of the meal period are not collectively a "matter relating to overtime entitlement." That argument is embodied in the following tortured syllogism:
 [The employees] tr[y] to lump the "bona fide" prerequisite with the overtime question. Logically, this cannot be done. Stated in the simplest terms of basic logic, the problem is this: If A, then B. One must prove A to establish B. In order for B to be, one must first establish A. If one postulates that overtime is due, one must first have established that the meal periods were not "bona fide." If A, then B.
 Brief for Appellee at 10-11.
 
 
 [2]
 The district court did, as the majority explains, dismiss the entire case under Fed.R.Civ.P. 12(b)(1). But its holding clearly was only that the court lacked jurisdiction over the overtime claim until the parties arbitrated the question of whether the meal period was bona fide. See J.A. at 176 (the parties' agreement "requires the plaintiffs to submit their dispute to arbitration before proceeding to this court." (emphasis added))