Filed:  January 14, 2005

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 03-6891
(CA-03-303-7)

BENJAMIN HENDERSON JONES,

Petitioner - Appellant,

versus

DANIEL A. BRAXTON, Warden; RONALD J. ANGELONE,

Respondents - Appellees.

O R D E R

The court amends its opinion filed December 28, 2004, as follows:

On page 8, the third line is amended by substituting "2254" for "2245" immediately after the word "section."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BENJAMIN HENDERSON JONES,
*Petitioner-Appellant,*

v.

DANIEL A. BRAXTON, Warden;
RONALD J. ANGELONE,
*Respondents-Appellees.*

No. 03-6891

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CA-03-303-7)

Argued: October 27, 2004

Decided: December 28, 2004

Before LUTTIG and SHEDD, Circuit Judges, and
Henry E. HUDSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Dismissed by published opinion. Judge Luttig wrote the opinion, in
which Judge Shedd and Judge Hudson joined.

## COUNSEL

**ARGUED:** Justin Sanjeeve Antonipillai, ARNOLD & PORTER,
L.L.P., Washington, D.C., for Appellant. Steven Andrew Witmer,
Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON**

**BRIEF:** Joseph A. Micallef, Holly Logue Prutz, ARNOLD & POR-TER, L.L.P., Washington, D.C., for Appellant. Jerry W. Kilgore, Attorney General of Virginia, Richmond, Virginia, for Appellees.

---

**OPINION**

LUTTIG, Circuit Judge:

Petitioner-appellant Benjamin Henderson Jones filed a notice of appeal from the district court's dismissal of his section 2254 petition as an unauthorized successive petition. Because we conclude that a certificate of appealability is required in order to appeal from the dismissal of a petition as unauthorized and successive, and because Jones has failed to make the requisite showing for a certificate of appealability, we deny a certificate of appealability and dismiss the appeal.

I.

Jones was convicted by a Virginia court in 1987 of the murders of his mother and half-brother and sentenced to life imprisonment plus twenty years. *See Jones* v. *Angelone*, 94 F.3d 900, 903-04 (4th Cir. 1996). Subsequently, he has brought three habeas actions in federal court to challenge his Virginia confinement. His original petition, filed in 1991, was considered on the merits and dismissed, and we affirmed that dismissal on appeal. *Id.* His second petition, filed in 1999, was dismissed by the district court for failure to exhaust state remedies, but on appeal, we determined that it was an unauthorized successive petition and affirmed the dismissal on those grounds. *See Jones* v. *Deeds*, 202 F.3d 259 (4th Cir. 1999) (unpublished).

In May 2003, Jones filed his third federal habeas petition. Noting that Jones had failed to provide any evidence of the authorization from this court required by 28 U.S.C. § 2244, J.A. 17, the district court filed the petition "for administrative purposes only" and dismissed it without prejudice as an unauthorized successive petition. J.A. 19. Jones filed a timely notice of appeal, J.A. 23, and a pro se brief in support of his appeal, J.A. 39-47. We requested briefing on

the issue of whether Jones must obtain a certificate of appealability, as provided by 28 U.S.C. § 2253, before appealing from the district court's dismissal of his habeas petition as successive and unauthorized.

## II.

The question whether a certificate of appealability is required in this case turns on the interpretation of 28 U.S.C. § 2253(c)(1) & (A), which provides as follows:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from *the final order in a habeas corpus proceeding* in which the detention complained of arises out of process issued by a State court . . . .

28 U.S.C. § 2253(c)(1) & (A) (emphasis added) (internal division omitted). Jones argues that section 2253(c)(1) does not apply in this case, because the district court's dismissal of his petition as an unauthorized successive petition was neither a "final order," nor an order "in a habeas corpus proceeding." We are not persuaded by either argument.

## A.

First, Jones argues that the district court's dismissal was not the "final order" in a habeas corpus proceeding. We disagree. At oral argument, Jones' counsel conceded that our interpretation of "final order" in section 2253(c)(1)(A) should be guided by the meaning of "final decision[ ]" in 28 U.S.C. § 1291, and in particular, by this court's construction of that phrase in *Domino Sugar Corp.* v. *Sugar Workers Local Union 392*, 10 F.3d 1064 (4th Cir. 1993). In *Domino Sugar*, the district court dismissed the plaintiff's complaint without prejudice for failure to exhaust contractual grievance and arbitration remedies, and the plaintiff appealed. In holding that section 1291 permitted that appeal, we ruled that the district court's dismissal of a complaint without prejudice could be treated as a final order under section 1291 only if "the grounds for dismissal clearly indicate that

no amendment in the complaint could cure the defects in the plaintiff's case." *Id.* at 1067 (alteration and quotation marks omitted) (quoting *Coniston Corp.* v. *Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir. 1988)). On the particular facts, we reasoned that "the district court [had] essentially made a final ruling that the [plaintiff] had to proceed to arbitration before seeking judicial relief," and that "the grounds of the dismissal made clear that no amendment could cure the defects in the Company's case." *Id.* (alterations omitted) (quoting *Coniston Corp.*, 844 F.2d at 463).

In this case, the district court's dismissal without prejudice is likewise a "final order" under the *Domino Sugar* test. As in *Domino Sugar*, the district court here did not identify any defect that could possibly be cured by mere amendment of the petition; rather, the district court held that no such petition could proceed without prior authorization from this court. J.A. 17. Accordingly, we conclude that the dismissal without prejudice of Jones' petition was a "final order" within the meaning of section 2253(c)(1)(A).

Jones contends that the dismissal was not a "final order" but, instead, a "collateral order," and thus that the certificate of appealability requirement of section 2253(c)(1) should not apply. This characterization is intuitively implausible; dismissing the petition for lack of jurisdiction terminated *all* proceedings in the district court, so the order was plainly not "collateral" to any pending proceedings. More basically, however, Jones' argument rests on a fundamental misunderstanding of the "collateral order" doctrine. That doctrine treats certain interlocutory orders as *final* for purposes of appeal, on the grounds that such "collateral orders" present self-contained issues that are independently ripe for immediate appellate review, despite the pendency of further proceedings in the district court. *See, e.g., Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 468 (1978) (describing a collateral order as one that "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment"); *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). In other words, "collateral orders" *are* final orders; they are "final decisions" within the meaning of section 1291. *See Cohen*, 337 U.S. at 546 ("We hold this order appealable [under 28 U.S.C. § 1291] because it is a *final disposition* of a claimed right . . . ."

(emphasis added)). To characterize the district court's order in this case as a "collateral order" — even if such a characterization were plausible — would but *confirm* our conclusion that it is a "final order" within the meaning of section 2253(c)(1).

B.

Jones contends that, even if the dismissal of his petition was a final order, it was not an order "in a habeas corpus proceeding" under section 2253(c)(1)(A). He points out that the Supreme Court has held that a habeas corpus case is not "pending" until a habeas corpus application is filed: "a case does not become 'pending' until an actual application for habeas corpus relief is filed in federal court." *Woodford* v. *Garceau*, 538 U.S. 202, 210 (2003). Because no successive habeas petition could be "filed" without prior authorization from this court under section 2244(b)(3)(A), Jones contends that his *attempt* to file a successive petition failed to initiate a federal habeas case. Therefore, he argues, the order dismissing his petition was not an order "in a habeas corpus proceeding." In support of this conclusion, he points out that, because the district court deemed his habeas petition to be plainly unauthorized and successive, the district court filed his petition "for administrative purposes only," J.A. 19. He thus contends that the district court did not "file" the petition in the proper, legally effective sense of that word. *See* 28 U.S.C. § 2244(b)(3)(A) ("*Before* a second or successive application permitted by this section *is filed* in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." (emphases added)). Rather than a "habeas corpus proceeding," Jones argues that the attempted filing of his petition in the district court initiated merely an unsuccessful *preliminary proceeding* to a "habeas corpus proceeding."

Although Jones' argument has some superficial appeal, we do not believe that his distinction between administrative "filing" and legally effective "filing" of the habeas application can bear the weight he places on it. It seems much more natural to interpret *Woodford* to hold that a habeas corpus case "does not become 'pending' until an actual application for habeas corpus relief is filed in federal court" *by the petitioner*, 538 U.S. at 210, *regardless* of whether the *district court* "files" that application "for administrative purposes only." *See Artuz*

v. *Bennett*, 531 U.S. 4, 8 (2000) ("A[ habeas] application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." (citations omitted) (emphasis in original) (identifying the COA requirement of section 2253 as a precondition to "proper filing")).

However, we need not reach the issue of whether *Woodford* includes applications filed "for administrative purposes only," because even if we were to adopt Jones' distinction between abortive, unauthorized filings and successful, authorized filings, we would still conclude that the district court's order was issued "in a habeas corpus proceeding" within the meaning of section 2253(c)(1)(A). Recently, in *Reid* v. *Angelone*, we had occasion to parse carefully the same phrase "in a habeas corpus proceeding" in the same statutory section. 369 F.3d 363, 367-69 (4th Cir. 2004). We concluded that both the noun "proceeding" and the adjective "habeas corpus" modifying that noun were to be construed broadly. Following this interpretative injunction, we conclude that, even if Jones is correct in arguing that the attempted filing and dismissal of an unauthorized successive petition is preliminary to and separate from the habeas case-in-chief, those actions nevertheless qualify as a distinct "habeas corpus proceeding" in their own right.

i.

In *Reid*, we concluded that the certificate of appealability requirement applied to the district court's denial of a Rule 60(b) motion for reconsideration of its prior order denying relief on a section 2254 petition. *See Reid*, 369 F.3d at 369. In particular, we held that the filing, consideration, and denial of a Rule 60(b) motion constituted a distinct "proceeding" within the meaning of section 2253(c)(1)(A), separate from the prior "proceeding" of consideration and denial of the section 2254 application. *Id*. at 367-68. In so holding, we relied on a broad definition of the word "proceeding" that included any unified action in the district court that terminates in a final judgment. *Id*. at 368 ("The term 'proceeding' is indeterminate. . . . But even under the more expansive definitions quoted above, a proceeding terminates

with a judgment."); *see also Black's Law Dictionary* 1221 (7th ed. 1999) (defining "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment," and alternatively as "[a]n act or step that is part of a larger action"); *Black's Law Dictionary* 1204 (6th ed. 1990) (similar). Because both the order denying relief to the section 2254 application in the first instance and the order denying relief to the Rule 60(b) motion for reconsideration were final judgments, we concluded that the larger habeas action included two separate proceedings: "Since Rule 60(b) motions are used to challenge final judgments, a proceeding involving a Rule 60(b) motion is necessarily separate from the proceeding giving rise to the underlying judgment." *Id.* at 368; *cf. United States* v. *Holland*, 214 F.3d 523, 525 n.4 (4th Cir. 2000) (noting that "the denial of a Rule 60(b) motion is appealable as a separate final order").

Applying this same definition of "proceeding" to the administrative filing and dismissal of Jones' petition, we conclude that these actions also constituted a "proceeding." After all, we have just concluded that the order dismissing Jones' petition was a "final order" within the meaning of section 2253 — just as the order denying the motion for reconsideration was a final order in *Reid*. Because the administrative filing, consideration, and dismissal of Jones' petition constituted a unified series of actions terminating in a final order, under the definition we adopted in *Reid*, we conclude that it was a "proceeding."

ii.

We also conclude that this proceeding was a "habeas corpus" proceeding under section 2253(c)(1)(A). In *Reid*, we held that the consideration and dismissal of the Rule 60(b) motion, though a distinct and separate proceeding from the principal "habeas corpus" proceeding concerning the section 2254 petition, was nevertheless a "habeas corpus proceeding" in its own right. *Reid*, 369 F.3d at 368-69. We reasoned that "[a] Rule 60(b) proceeding, however distinct from the underlying § 2254 proceeding, can never be entirely independent of the underlying proceeding," because the character of the Rule 60(b) proceeding is determined by the proceeding to which it is ancillary: "after all, if not for that underlying proceeding, there would be no judgment to give rise to a Rule 60(b) motion." *Id.* at 369.

If a proceeding that is ancillary and *postliminary* to the section 2254 proceeding is a "habeas corpus proceeding," then a proceeding that is ancillary and *preliminary* to the section 2254 proceeding must likewise be considered a "habeas corpus proceeding." Just as the Rule 60(b) motion initiates a "habeas corpus proceeding" by seeking to reopen or revisit a proceeding on a section 2254 petition, so also does an administratively filed section 2254 petition initiate a "habeas corpus proceeding" by seeking to initiate a section 2254 proceeding. Thus, even if we were to accept Jones' contention that his abortive attempt to file a successive section 2254 petition did not in fact initiate a habeas case under *Woodford*, we would still conclude that it initiated an ancillary proceeding that constitutes a "habeas corpus proceeding" within the meaning of section 2253(c)(1)(A).

The Supreme Court's discussion in *Slack* v. *McDaniel* presupposed the conclusion we reach today. 529 U.S. 473 (2000). In that case, the Supreme Court considered and decided an appeal from Slack's federal habeas petition, which was dismissed as successive by the district court. *Id.* at 479-80. Although Slack contended that he was exempt from the strictures that AEDPA places on habeas appeals because his initial petition was filed prior to AEDPA's effective date, *id.* at 481, the Supreme Court held that Slack's appeal was subject to the certificate of appealability requirement of section 2253 because his notice of appeal had been filed after AEDPA became effective. *Id.* at 482 ("Because Slack sought appellate review two years after AEDPA's effective date, § 2253(c) governs his right to appeal . . . and so he was required to seek a COA to obtain appellate review of the dismissal of his habeas petition."). Accordingly, the Supreme Court presupposed that the dismissal of a habeas petition as an impermissible successive petition is "the final order in a habeas corpus proceeding" under section 2253.

In sum, we hold that an order dismissing a habeas petition without prejudice on the grounds that it is an unauthorized successive petition constitutes "the final order in a habeas proceeding" within the meaning of 28 U.S.C. § 2253(c)(1)(A), and thus that the certificate of appealability requirement of that section applies to any appeal from such an order. Because the district court dismissed Jones' petition without prejudice as unauthorized and successive, he must obtain a

certificate of appealability in order to appeal from the district court's order.

### III.

Under Federal Rule of Appellate Procedure 22(b), we are required to construe the notice of appeal that Jones filed as an application for a certificate of appealability. *See* Fed. R. App. P. 22(b)(2) ("If no express request for a certificate [of appealability] is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals."). Accordingly, we must decide whether Jones is entitled to a certificate of appealability in this case.

In *Slack*, the Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that . . . jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Here, Jones has not shown that jurists of reason would find the district court's procedural ruling debatable. On the contrary, the district court's procedural ruling appears plainly correct, because Jones' petition was both clearly successive and clearly unauthorized. *See* J.A. 16-17. Accordingly, we deny a certificate of appealability and dismiss Jones' appeal.

### IV.

Jones raises two additional issues, which we address in turn. First, he urges us to recharacterize his notice of appeal as a motion for pre-filing authorization ("PFA") under section 2244(b)(3)(A), rather than forcing him to file a separate PFA motion after the dismissal of his appeal. Second, he requests that we adopt a policy requiring the district courts automatically to transfer all unauthorized successive petitions to the court of appeals pursuant to the authority granted them by 28 U.S.C. § 1631. We reject both of these requests.

### A.

In urging that we recharacterize his notice of appeal as a PFA motion under section 2244, Jones relies on *United States* v. *Wines-*

*tock*, 340 F.3d 200 (4th Cir. 2003), where we addressed a prisoner's appeal from the district court's order denying his motion for reconsideration of its dismissal of his section 2255 petition. *See Winestock*, 340 F.3d at 203. We first held that Winestock's motion for reconsideration under Rule 60(b) should have been treated as a successive application for habeas relief. *Id.* at 206 ("[W]e now hold that district courts must treat Rule 60(b) motions as successive collateral review applications when failing to do so would allow the applicant to evade the bar against relitigation of claims presented in a prior application or the bar against litigation of claims not presented in a prior application."). With little independent analysis, we then "follow[ed] the lead of our sister circuits" and construed Winestock's notice of appeal from the denial of the Rule 60(b) motion as a PFA motion under section 2244(b). *Id.* at 208 (citing *United States* v. *Torres*, 282 F.3d 1241, 1246 (10th Cir. 2002)). Jones urges us to adopt the same approach here.

We decline to treat Jones' notice of appeal as a PFA motion. Recharacterization was uniquely appropriate on the facts of *Winestock*, where what was being recharacterized as a PFA motion was a notice of appeal from the denial of a Rule 60(b) motion *that had itself been recharacterized as an unauthorized successive habeas petition*. In such a case, where the original motion purported to be a Rule 60(b) motion for reconsideration, it was inevitable that such a motion, when recharacterized as a habeas petition, would be both "unauthorized" and "successive." After all, it had originally been filed as a motion to reconsider the dismissal of a prior habeas petition (ergo successive), under Civil Rule 60(b), which includes no PFA requirement (ergo unauthorized). So any appeal challenging the district court's determination that such a recharacterized motion was unauthorized and successive would have been futile. Accordingly, in the interest of economy, it made sense in *Winestock* to recharacterize the notice of appeal as a PFA motion. However, in cases *not* involving recharacterized Rule 60(b) motions, it is not inevitable that any appeal from the district court's determinations on the issues of authorization and successiveness would be futile. For example, in *Slack* v. *McDaniel*, the Supreme Court held that the district court *erred* in determining that Slack's petition was "successive," because his original petition had been dismissed without prejudice for failure to exhaust state remedies.

*See Slack*, 529 U.S. at 478. Accordingly, the rationale supporting recharacterization in *Winestock* is inapplicable here.

Second, we are reluctant to adopt a blanket policy of extending *Winestock* recharacterizations to cases that do not involve recharacterized Rule 60(b) motions, because the denial of a PFA motion can impose unforeseen prejudice on the litigant. Recently, in *In re Williams*, 364 F.3d 235 (4th Cir. 2004), we held that a prisoner filing a second or successive *PFA motion* is estopped from raising arguments that could have been raised in his initial PFA motion. *Id.* at 240. Because the dismissal of a PFA motion can thus prejudice a defendant, we should hesitate to engage in ill-considered recharacterizations, as we recognized in *Williams*. *See id.* at 241 n.4; *Castro* v. *United States*, 124 S. Ct. 786, 794 (2003) (Scalia, J., concurring) (arguing that recharacterization "should certainly not occur in any situation where there is a risk that the patronized litigant will be harmed rather than assisted by the court's intervention"). The risk of prejudice is greatest when a petitioner-appellant has focused his briefing on challenging the reasoning of the district court's dismissal, instead of detailing his grounds for pre-filing authorization of a successive petition. Accordingly, we decline to adopt a policy of automatic recharacterization.*

Third, in any event we would be unwilling to recharacterize Jones' appeal as a PFA motion on the facts of this case, because Jones' filing has already been given full consideration as a direct appeal. Such con-

---

*We could allay the risk of prejudice to petitioners by dismissing appeals recharacterized as PFA motions without prejudice. *See Williams*, 364 F.3d at 241 n.4 ("In order to avoid a potential injustice arising from this practice, we hold that denials of '*Winestock* motions' are without prejudice unless the opinion or order denying the motion expressly states otherwise."). But the principal rationale advanced for recharacterizing Jones' appeal (and others like it) as a PFA motion is to promote efficiency by obviating the need for a subsequent filing. *See Appellant's Br.* at 12-13 (citing *Nunez* v. *United States*, 96 F.3d 990, 991 (7th Cir. 1996) ("Treating an appeal as a request for authorization will speed cases to decision with a minimum of paperwork . . . .")). If we were to dismiss the recharacterized PFA motion without prejudice, thus permitting and inviting the filing of a subsequent PFA motion, we would achieve no such gain in efficiency.

sideration is not inherently futile, because some appeals from such dismissals of petitions are indeed meritorious. *See Slack*, 529 U.S. at 489-90. The fiction of recharacterization would reach absurdity if we permitted a single pro se filing to play multiple, wholly independent roles within AEDPA's procedural system. AEDPA simply does not provide for a single filing to function both as an appeal from a district court order and as a motion for pre-filing authorization. And imposing such "double duty" on a single filing would show insufficient respect for the boundaries of the intricate procedural scheme that Congress created. Thus we will not recharacterize an appeal as a PFA motion where, as here, that appeal has already been given full consideration on direct review.

### B.

For similar reasons, we decline Jones' invitation to impose on the district courts a blanket policy of mandatory transfer of unauthorized successive petitions to this court for consideration as PFA motions. Congress has explicitly granted the district courts discretion over transfers under section 1631. *See* 28 U.S.C. § 1631 ("[T]he court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought . . . ."). For the same reasons that we refuse to bind our own discretion over recharacterizations on appeal, we also refuse to bind the statutory discretion of the district courts, as they consider these petitions in the first instance, to transfer petitions to us only when it is "in the interest of justice."

### CONCLUSION

For the aforementioned reasons, we hold that Jones is required to seek a certificate of appealability to appeal from the district court's order in this case. Because Jones has failed to make the requisite showing, we deny a certificate of appealability and dismiss the appeal.

*DISMISSED*