PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JUANITA POPE REID,
　　　　　*Petitioner-Appellant,*

v.

RONALD J. ANGELONE, Director,
　　　　　*Respondent-Appellee.*

No. 03-6146

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-02-300-3)

Argued: January 22, 2004

Decided: May 19, 2004

Before WILKINS, Chief Judge, and WIDENER and
MICHAEL, Circuit Judges.

---

Vacated and remanded by published opinion. Chief Judge Wilkins
wrote the opinion, in which Judge Widener and Judge Michael joined.

---

## COUNSEL

**ARGUED:** Keith R. Palfin, Student Counsel, Appellate Litigation
Program, GEORGETOWN UNIVERSITY LAW CENTER, Wash-
ington, D.C., for Appellant. Jennifer Ransom Franklin, Assistant
Attorney General, OFFICE OF THE ATTORNEY GENERAL, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Steven H. Goldblatt,
Director, Appellate Litigation Program, GEORGETOWN UNIVER-

SITY LAW CENTER, Washington, D.C., for Appellant. Jerry W. Kilgore, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

## OPINION

WILKINS, Chief Judge:

Juanita Pope Reid seeks review of a district court order denying her motion for reconsideration of an order denying her application for habeas corpus relief. We hold that Reid must obtain a certificate of appealability as a prerequisite to our consideration of her claims. *See* 28 U.S.C.A. § 2253(c) (West Supp. 2003). In addition, we grant a certificate of appealability as to the only claim that Reid seeks to appeal, vacate the decision of the district court, and remand with instructions.

I.

In November 2000, Reid appeared in a Virginia state court and pled guilty to larceny. The court accepted her plea, revoked the probation she was serving for a prior offense, and sentenced her to a total of six years imprisonment—four years for the probation violation and two years for the new offense (with an additional three years suspended). Reid's ensuing appeals were unsuccessful, and she did not seek collateral review in state court.

In July 2001, Reid filed an application for habeas corpus relief pursuant to 28 U.S.C.A. § 2254 (West 1994 & Supp. 2003). The district court dismissed this application without prejudice for failure to exhaust state remedies.

Reid subsequently filed a second habeas application. After the Commonwealth filed its answer, however, Reid moved to withdraw her application without prejudice so that she could pursue a state habeas action. The district court denied this motion and dismissed Reid's application with prejudice.

The district court construed Reid's application to present three claims:

1. Petitioner did not understand the nature of the charges and the consequences of pleading guilty; her attorney led her to believe she would only receive a ten month sentence.

2. Petitioner's conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence to petitioner, specifically that no presentence report was prepared despite the judge's request for one.

3. Petitioner's conviction was obtained by a violation of her privilege against self-incrimination when the judge heard evidence from the probation officer concerning her participation in treatment for substance abuse and kleptomania.

J.A. 77. The court determined that Claims 2 and 3 were procedurally defaulted and that Claim 1, the ineffective assistance claim, was meritless in light of Reid's representations at the plea hearing "that she was entering the plea voluntarily, that nobody forced her into entering the plea, that she understood the maximum penalty for the crime and that she was satisfied with her attorney's performance." *Id.* at 81.

Reid then moved for reconsideration, asking the district court "to vacate dismissal with prejudice prayerfully asking to be without prejudice, [and] to also vacate judgement of denial of withdraw[a]l of petition based on Petitioner mental health issues." *Id.* at 84. Reid further asked the court "to grant also the remand for resentencing." *Id.* The court construed this as a motion for relief from the judgment under Federal Rule of Civil Procedure 60(b) and denied the motion. Reid now appeals this order.

II.

The initial question before us is whether Reid needs a certificate of appealability (COA) to appeal the denial of her Rule 60(b) motion. Under 28 U.S.C.A. § 2253(c)(1)(A), a COA is required in order for a habeas applicant to obtain appellate review of "the final order in a

habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."[1] Thus, we must decide whether the order denying Reid's Rule 60(b) motion was "the final order in a habeas corpus proceeding."

To interpret this statute, we begin by examining its plain language. *See Ramey v. Director*, 326 F.3d 474, 476 (4th Cir. 2003). We must give the relevant terms their "common and ordinary meaning." *Mapoy v. Carroll*, 185 F.3d 224, 229 (4th Cir. 1999) (internal quotation marks omitted). And, to the extent that there is any ambiguity in these terms, we must consider other indicia of congressional intent, such as the legislative history, *see Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 627 (1993). It is also appropriate in cases of ambiguity to consider which interpretation of the statute would best give effect to the underlying legislative purpose. *See United States v. Goines*, 357 F.3d 469, 475 (4th Cir. 2004).

### A.  *"The Final Order"*

We begin with the phrase "the final order." It is undisputed that an order denying relief under Rule 60(b) is a "final order" for purposes of appellate review. *See United States v. Holland*, 214 F.3d 523, 525 n.4 (4th Cir. 2000). Reid maintains, however, that the order denying her Rule 60(b) motion was not "*the* final order" in this case. She

---

[1]Section 2253(c) provides in full:

　　(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

　　　　(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

　　　　(B) the final order in a proceeding under section 2255.

　　(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

　　(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

asserts that because Congress used the definite article "the," rather than a broader term like "a" or "any," § 2253(c) applies only to the order denying relief on her habeas application.

Reid is correct about the meaning of the word "the." *See Webster's Third New Int'l Dictionary* 2368 (1981) (stating that the word "the" is "used . . . to indicate that a following noun . . . refers to someone or something that is unique"). Thus, because Congress used the definite article "the," we conclude that, in every habeas proceeding, there is only one order subject to the requirements of § 2253(c).

## B.  *"Proceeding"*

The conclusion we have just stated does not end our inquiry. Instead, we must determine whether the order denying Reid's Rule 60(b) motion was issued within the same "habeas corpus proceeding" as the order denying her § 2254 application. We conclude that it was not; on the contrary, a single habeas action may embrace multiple habeas "proceedings," and more than one of these proceedings may give rise to a "final order" subject to the COA requirement.

The term "proceeding" is indeterminate:

> The word ["proceeding"] may be used synonymously with 'action' or 'suit' to describe the entire course of an action at law or suit in equity from the issuance of the writ or filing of the complaint until the entry of a final judgment, or may be used to describe any act done by authority of a court of law and every step required to be taken in any cause by either party.

*Black's Law Dictionary* 1204 (6th ed. 1990); *see also Black's Law Dictionary* 1221 (7th ed. 1999) (defining "proceeding" alternatively as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and as "[a]n act or step that is part of a larger action"). But even under the more expansive definitions quoted above, a proceeding terminates with a judgment. Since Rule 60(b) motions are used to challenge final judgments, a proceeding involving a Rule 60(b)

motion is necessarily separate from the proceeding giving rise to the underlying judgment. *Cf. Holland*, 214 F.3d at 525 n.4 (noting that "the denial of a Rule 60(b) motion is appealable as a separate final order").

The language of Rule 60(b) confirms this understanding of the word "proceeding." The rule allows a party to seek relief from "a final judgment, order, or *proceeding*." Fed. R. Civ. P. 60(b) (emphasis added). This indicates that filing a Rule 60(b) motion initiates a new proceeding that is separate from the proceeding from which the movant seeks relief (or, as in this case, the proceeding giving rise to the judgment from which the movant seeks relief).

To the extent that any ambiguity remains, it may be resolved through examination of pre-AEDPA procedures. Congress enacted § 2253(c) in its current form as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Before the AEDPA, § 2253 provided in pertinent part:

> An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.

28 U.S.C.A. § 2253 ¶ 3 (West 1994). Although the AEDPA substantially revised this provision, it retained the phrase relevant to our analysis—"the final order in a habeas corpus proceeding." Because Congress did not change this phrase, we presume that Congress intended to ratify any settled judicial interpretation regarding the scope of the certification requirement. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). It is therefore of great significance that pre-AEDPA courts consistently required a certificate of probable cause (CPC) when reviewing orders denying Rule 60(b) motions in habeas actions. *See Lynch v. Blodgett*, 999 F.2d 401, 402-03 (9th Cir. 1993) (per curiam order); *see also Waye v. Townley*, 884 F.2d 762, 762 (4th Cir. 1989) (per curiam) (noting that habeas applicant was granted CPC for appeal from Rule 60(b) order).

### C.   *"Habeas Corpus Proceeding"*

There is one question remaining under § 2253(c): If an order denying Rule 60(b) constitutes "the final order" in a discrete "proceeding," is that Rule 60(b) proceeding a "habeas corpus proceeding" for purposes of § 2253(c)? We hold that it is.

A Rule 60(b) proceeding, however distinct from the underlying § 2254 proceeding, can never be entirely independent of the underlying proceeding; after all, if not for that underlying proceeding, there would be no judgment to give rise to a Rule 60(b) motion. Thus, it is appropriate to treat a Rule 60(b) proceeding as a "habeas corpus proceeding"—one of multiple proceedings within the larger habeas action.

This conclusion is supported by Supreme Court precedent applying the rules governing habeas proceedings to Rule 60(b) motions challenging habeas judgments. *See, e.g.*, *Pitchess v. Davis*, 421 U.S. 482, 489-90 (1975) (per curiam) (applying the exhaustion requirement to a claim presented in a Rule 60(b) motion seeking additional relief beyond the judgment in the original habeas proceeding). We therefore hold that litigation relating to a Rule 60(b) motion in a habeas action constitutes a "habeas corpus proceeding" and that the order denying Rule 60(b) relief is "the final order" in such a proceeding.

### D.   *Policy Considerations*

For the reasons stated above, we are persuaded that § 2253(c) requires that a habeas petitioner obtain a COA in order to appeal the denial of a Rule 60(b) motion. Nevertheless, in the interest of thoroughness, we will address Reid's policy arguments against requiring a COA in this circumstance.

We note initially that the purpose of the COA requirement is to enable the courts of appeals to winnow out frivolous appeals in habeas cases. *See Barefoot v. Estelle*, 463 U.S. 880, 892-93 (1983) (explaining the purpose of the pre-AEDPA CPC requirement); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (noting that the AEDPA largely codified the standards set forth in *Barefoot*). As the

Second Circuit has noted, "it would be rather anomalous for Congress to have intended to screen out unmeritorious appeals from denials of habeas corpus petitions and yet not have wished to apply this same screen to 60(b) motions seeking to revisit those denials." *Kellogg v. Strack*, 269 F.3d 100, 103 (2d Cir. 2001) (per curiam).[2]

---

[2]Five courts of appeals other than the Second Circuit have applied the COA requirement to appeals from Rule 60(b) orders in habeas cases. *See Gonzalez v. Sec'y*, ___ F.3d ___, 2004 WL 883196, at *9-*13 (11th Cir. Apr. 26, 2004) (en banc) (holding that COA is required for appeal from denial of Rule 60(b) motion); *Rutledge v. United States*, 230 F.3d 1041, 1052-53 (7th Cir. 2000) (denying COA as to issue raised in Rule 60(b) motion); *Morris v. Horn*, 187 F.3d 333, 336 (3d Cir. 1999) (same); *Langford v. Day*, 134 F.3d 1381, 1383 (9th Cir. 1998) (per curiam order) (same); *Zeitvogel v. Bowersox*, 103 F.3d 56, 57 (8th Cir. 1996) (per curiam order) (same). The only court to depart from this consensus is the Fifth Circuit, which has held that no COA is required if the underlying motion was a true Rule 60(b) motion rather than a successive habeas application. *See Dunn v. Cockrell*, 302 F.3d 491, 492 & n.1 (5th Cir. 2002) (per curiam), *cert. denied*, 537 U.S. 1181 (2003); *cf. United States v. Winestock*, 340 F.3d 200, 207 (4th Cir.) (explaining how to distinguish between true Rule 60(b) motions and disguised successive applications), *cert. denied*, 124 S. Ct. 496 (2003).

Of the cases cited above, only *Kellogg* and *Gonzalez* offered reasons to support their holdings regarding the applicability of § 2253(c). We find the reasons articulated in *Kellogg* persuasive, but we do not rely extensively on that decision because it did not address the arguments presented here. *Gonzalez*, on the other hand, did address the question of whether the phrase "the final order" encompasses more than one order and concluded that the phrase may be construed as plural under the Dictionary Act. *See Gonzalez*, 2004 WL 883196, at *9. The Dictionary Act provides, in pertinent part, that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] words importing the singular include and apply to several persons, parties, or things . . . ." 1 U.S.C.A. § 1 (West 1997). Although the Dictionary Act essentially confirms our understanding of § 2253(c), we have not relied on this statute because it is "not . . . to be applied except where it is necessary to carry out the evident intent of the statute." *First Nat'l Bank in St. Louis v. Missouri*, 263 U.S. 640, 657 (1924); *see Toy Mfrs. of Am., Inc. v. Consumer Prod. Safety Comm'n*, 630 F.2d 70, 74 (2d Cir. 1980) (declining to rely on Dictionary Act when other evidence was available to establish intent of Congress). We agree with *Gonzalez*, however, about the value of the COA requirement as a "filter" for plainly meritless appeals. *Gonzalez*, 2004 WL 883196, at *10.

Reid argues that there is no anomaly in declining to apply § 2253(c) to appeals from Rule 60(b) orders because Rule 60(b) motions are already subject to threshold requirements designed to screen out frivolous claims. We disagree.

Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Motions within each category are subject to various limitations. For example, motions under Rule 60(b)(1), (2), or (3) must be made within a year after entry of the order being challenged. *See* Fed. R. Civ. P. 60(b). Also, a motion under Rule 60(b)(6) may not be granted absent "extraordinary circumstances." *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 n.2 (4th Cir. 2000) (internal quotation marks omitted).

We decline to treat these limitations on Rule 60(b) review as equivalent to the restrictions imposed by § 2253(c). Neither the Rule itself nor the cases interpreting it require a 60(b) movant to satisfy the primary prerequisite for issuance of a COA—namely, making "a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2). Moreover, as noted above, the purpose of the COA requirement is to screen out frivolous appeals. In contrast, the limits on Rule 60(b) review are designed to protect the finality of judgments. *See, e.g.*, *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (noting that district court must consider interests of finality in resolv-

ing motion pursuant to Rule 60(b)(3)). That these interests are not interchangeable is demonstrated by the fact that Congress requires a COA in habeas cases even though finality concerns figure prominently in habeas litigation, *see Calderon v. Thompson*, 523 U.S. 538, 554-55 (1998). We therefore conclude that, notwithstanding the limits on Rule 60(b) review, requiring a COA for an appeal from a Rule 60(b) motion is necessary to achieve the congressional purposes underlying § 2253.

## III.

Having concluded that Reid needs a COA to obtain review of the order denying her Rule 60(b) motion, we now consider whether a COA should issue. Reid's Rule 60(b) motion apparently raised two claims: (1) that the district court erred in refusing to allow her to withdraw her habeas application ("the Withdrawal Claim"), and (2) that the state court abused its discretion in imposing a six-year sentence ("the Sentencing Claim").[3] On appeal, however, Reid seeks review only of the Withdrawal Claim. Because this claim is procedural in nature, we may not grant a COA unless Reid establishes (a) "that jurists of reason would find it debatable whether the [Rule 60(b) motion] states a valid claim of the denial of a constitutional right" and (b) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

## A.

In order to apply the first of the *Slack* requirements, we must determine where to look to assess whether Reid has made a substantial showing of the denial of a constitutional right. The Withdrawal Claim itself is not constitutional in nature. Moreover, this claim is entirely distinct from the Sentencing Claim, because, even if we ultimately grant relief as to the Withdrawal Claim and remand this case to the district court, our remand would not open the door to reconsideration of the Sentencing Claim. It therefore would not make sense to consider the Sentencing Claim in determining whether Reid's With-

---

[3]We view Reid's request that the dismissal with prejudice be converted to a dismissal without prejudice as merely an alternate phrasing of the Withdrawal Claim.

drawal Claim makes the showing required by § 2253(c)(2). *Cf.* 28 U.S.C.A. § 2253(c)(3) (requiring that COA specify issues for review). Thus, if we were to look only at Reid's Rule 60(b) motion, we would find no constitutional claim to support issuance of a COA.

We hold, however, that we should not look exclusively at the motion. Instead, we may also examine the underlying habeas application. *See Morris v. Horn*, 187 F.3d 333, 336 (3d Cir. 1999) (holding, pre-*Slack*, that a court may grant a COA for review of a Rule 60(b) order based on "a credible showing that the District Court's denial of Rule 60(b) relief was in error combined with a showing that the underlying habeas petition alleges a denial of a constitutional right").

In reviewing Reid's habeas application to determine whether she has made a substantial showing of the denial of a constitutional right, we look only at those claims that are not "distinct" from her procedural claim, as we have used that term above. In other words, we look at the claims that the district court may reexamine if we conclude that its procedural ruling was erroneous; if a particular substantive claim could not form the basis for relief on remand following vacatur of a challenged procedural ruling, then we must disregard that claim in determining whether to grant a COA with respect to the procedural ruling.[4]

Applying this principle here is straightforward, because the procedural ruling at issue—the denial of Rule 60(b) relief on the Withdrawal Claim—affected all of the claims in the underlying

---

[4]In prior cases, we have not expressly defined which substantive claims we may consider in conducting the first prong of the *Slack* inquiry, but our holding today is consistent with existing practice. *Compare Hernandez v. Caldwell*, 225 F.3d 435, 437 (4th Cir. 2000) (examining a limitations ruling that resulted in dismissal of an entire application and holding that a COA was proper as to all claims because the limitations ruling was incorrect and all of the claims "state[d] a valid claim of the denial of a constitutional right" (internal quotation marks omitted)), *with Rose v. Lee*, 252 F.3d 676, 684-88 (4th Cir. 2001) (reviewing claims that were individually deemed procedurally defaulted and examining each claim individually to determine whether the appellant had made a substantial showing of the denial of a constitutional right).

application. If that procedural decision was erroneous, then Reid may be entitled to have the judgment as to all of her substantive claims changed from a dismissal *with* prejudice to a dismissal *without* prejudice. We may therefore consider any of the claims in Reid's application in answering the first question of the *Slack* inquiry.

Furthermore, it is sufficient for Reid to make the requisite showing with respect to *any one* of the claims in her application. In other words, if any one of Reid's claims presents a substantial showing of the denial of a constitutional right, then we must conclude that the first *Slack* requirement is satisfied, and we need not examine the other claims in the application. *See Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000) (holding that the first *Slack* prong was satisfied because "[a]t least some of [the applicant's] claims" alleged the denial of a constitutional right).

Following this approach, we hold that the first requirement of *Slack* is satisfied because Reid's ineffective assistance of counsel claim makes a substantial showing of the denial of a constitutional right. The district court denied relief on this claim based on Reid's statements at her plea colloquy. However, nothing in those statements is inconsistent with Reid's allegation that her attorney advised her that she faced a maximum penalty of ten months imprisonment. It is therefore debatable among reasonable jurists whether the denial of relief on Reid's ineffective assistance claim was correct. This showing as to one of the claims in the underlying application suffices to satisfy the first of the requirements set forth in *Slack*.

B.

With respect to the second showing required under *Slack*, we must again consider where our focus should be. We could look exclusively at the actual analysis employed by the district court. Or, we could assess both the rationale relied on by the district court and any alternative grounds suggested by the record. It is not clear—either from § 2253(c) itself or from applicable precedent—which of these approaches is proper.[5]

---

[5]In theory, there are many situations in which a procedural consideration not addressed by the district court might render an appeal futile.

We need not resolve that question here, however. As discussed below in Part III.B.1, the validity of the rationale actually applied by the district court is debatable among jurists of reason. And, as we will subsequently explain, the record does not present any non-debatable basis for denying Reid's motion arising either from the general limitations that apply in Rule 60(b) proceedings (Part III.B.2) or from the jurisdictional constraints that govern Rule 60(b) motions in habeas cases (Part IV). Accordingly, no matter how we approach the inquiry before us, Reid has demonstrated that the procedural ruling of the district court is debatable among reasonable jurists.

1.

We initially consider the analysis employed by the district court. In its order denying Rule 60(b) relief, the court recited the standards for such relief and then stated: "For the reasons previously articulated by the Court, Reid has failed to allege a meritorious claim entitling her to relief under Fed. R. Civ. P. 60(b). Accordingly, Reid's motion for relief from judgment will be denied." J.A. 89. We construe this order to indicate that the court denied Reid's Rule 60(b) motion as to the Withdrawal Claim for the same reasons the court had already denied Reid's pre-judgment motion to withdraw. We therefore begin our COA inquiry by considering whether reasonable jurists could debate the correctness of the justification articulated by the district court when it denied Reid's motion to withdraw.

---

For example, after the district court dismisses a claim on its merits, the court of appeals might conclude that the claim is procedurally defaulted. In situations like this, the court of appeals could deny a COA on the ground that any appeal would be futile. *See Krantz v. United States*, 224 F.3d 125, 127 (2d Cir. 2000) (per curiam) (denying COA on mootness grounds because habeas applicant died while request for COA was pending); *cf. Rodriguez v. Scillia*, 193 F.3d 913, 917-18 (7th Cir. 1999) (vacating COA upon determining that prosecutorial misconduct claim—which district court denied on merits—was procedurally defaulted). Alternatively, the court could grant a COA (if the applicant shows that the analysis employed by the district court would be debatable among reasonable jurists) and then affirm the denial of habeas relief on procedural grounds. *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 75 n.2 (2d Cir. 1999).

The district court did not expressly set forth its basis for denying this motion, but we can reconstruct its reasoning from the materials in the record. Reid moved to withdraw her petition "[s]o I can proceed with writ of habeas corpus in state court." *Id.* at 73. The district court denied this motion simultaneously with its determination that all of Reid's claims were procedurally defaulted or meritless and that her habeas application therefore should not be dismissed for failure to exhaust state remedies. Thus, we infer that the court decided that dismissal without prejudice was inappropriate because Reid plainly was not entitled to relief on any of her claims.

Although "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," 28 U.S.C.A. § 2254(b)(2), reasonable jurists could debate whether such a disposition was appropriate here. As noted above, the district court resolved Reid's ineffective assistance claim based on representations that did not, in fact, undermine her claim. Moreover, if the district court had allowed Reid to withdraw her application and exhaust state remedies, she might have had a hearing in state court at which she could have proven that she was misinformed by her attorney.[6] Thus, Reid has made a substantial showing that the district court abused its discretion in denying her application on the merits instead of granting her motion to withdraw her application without prejudice. *Cf. Ellett Bros. v. United States Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (applying abuse of discretion standard in reviewing order granting motion to voluntarily dismiss claim without prejudice). And, because the district court relied on the same grounds in denying Reid's Rule 60(b) motion, reasonable jurists could debate whether this order was an abuse of discretion as well.

---

[6]We do not mean to imply that we accept Reid's allegation that she received incorrect information from her attorney. Our point is rather that, until there is an evidentiary hearing on this question, it is impossible to determine whether this allegation is true. The appropriate venue for such a hearing would be state court rather than federal court. *See* 28 U.S.C.A. § 2254(e)(2).

2.

Even if the denial of Reid's motion to withdraw was erroneous (which we do *not* hold; we hold only that this ruling is debatable among reasonable jurists), it would not necessarily follow that Reid is entitled to Rule 60(b) relief, as Rule 60(b) prescribes multiple limitations on post-judgment relief. Although it appears that the district court did not rely on these limitations in ruling on Reid's Withdrawal Claim, we will nevertheless consider whether the record suggests any non-debatable basis for denying Reid's Rule 60(b) motion based on the limits of Rule 60(b) review. We find none.

The only provision of Rule 60(b) that is potentially applicable here is Rule 60(b)(6), which permits a district court to modify a previous decision based on "any . . . reason justifying relief from the operation of the judgment." Rule 60(b)(6) "provides the court with a grand reservoir of equitable power to do justice in a particular case." *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 872 (4th Cir. 1999) (internal quotation marks omitted). Nevertheless, as noted above, a court may not grant relief pursuant to Rule 60(b)(6) absent extraordinary circumstances.

The possibility that Reid qualifies for Rule 60(b)(6) relief is not so remote that this appeal is necessarily futile. Reid diligently sought leave to withdraw her habeas application, filing her motion to withdraw before her application was dismissed and then promptly reiterating this request (by way of her Rule 60(b) motion) after the dismissal. There are strong equitable considerations favoring such motions in habeas cases, given the stringent requirements a prisoner must satisfy to file a successive habeas application, *see* 28 U.S.C.A. § 2244(b) (West Supp. 2003). *Cf. Castro v. United States*, 124 S. Ct. 786, 792 (2003) (noting that courts have exercised special care in habeas cases because of the obstacles to filing successive applications). And Reid has indicated that special considerations may be present here— specifically, her "mental health issues" and her apparently limited ability to understand court procedures. J.A. 84; *see Klapprott v. United States*, 335 U.S. 601, 613-15 (1949) (opinion of Black, J.) (holding that relief from default judgment of denaturalization was proper under Rule 60(b)(6) because petitioner was incarcerated and ill when judgment was entered). We do not know whether Reid's alle-

gations concerning her mental health and limited capacity are accurate, but the allegations alone, when combined with the other reasons we have set forth above, convince us that it is appropriate to grant a COA and delve further into the issues presented in this appeal. For these reasons, and in light of the jurisdictional concerns discussed below, we grant a COA on the question of whether the district court properly denied Reid's post-judgment request to withdraw her habeas application.

IV.

Having issued a COA, we are now empowered to consider whether the district court erred in denying Reid's Rule 60(b) motion. We conclude that the district court lacked jurisdiction to consider the motion, and we therefore vacate the district court order and remand for appropriate proceedings.[7]

In *United States v. Winestock*, 340 F.3d 200 (4th Cir.), *cert. denied*, 124 S. Ct. 496 (2003), we held that some Rule 60(b) motions in habeas cases should be treated as successive habeas applications. *See id.* at 206-07. Reid's motion was filed and denied before *Winestock* was decided, and the parties have not urged that the district court

---

[7]It may appear incongruous for us to grant a COA but then hold that the district court had no jurisdiction. As this case illustrates, however, a habeas applicant may have a strong interest in having an appellate court declare that the judgment of the district court is void for lack of jurisdiction. Thus, if we adopted a blanket policy of denying a COA upon determining that the district court lacked jurisdiction, this would leave an entire class of aggrieved habeas applicants with no remedy. Moreover, we may not forgo the COA inquiry altogether, as there is no exemption in § 2253(c) for questions of subject-matter jurisdiction, *see United States v. Sosa*, 364 F.3d 507, 2004 WL 758382, at *3 (4th Cir. Apr. 9, 2004) (declining to adopt proposed exception to § 2253(c) that was not supported by statutory language), and we are bound in all cases to ascertain our own appellate jurisdiction before reviewing a district court judgment, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding that court of appeals may not assume jurisdiction and resolve appeal on merits). Consequently, we must accept some incongruity in order to be faithful to the statutory scheme while still affording appellate review to all applicants who are entitled to such review.

erred in addressing the merits of Reid's motion instead of treating it as an unauthorized successive application. Nevertheless, because this issue is jurisdictional, we must address it. *See id.* at 205 (stating that district court lacks jurisdiction to consider successive application filed without authorization).

*Winestock* explained that "a motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application, while a motion seeking a remedy for some defect in the collateral review process will generally be deemed a proper motion to reconsider." *Id.* at 207. Reid's Rule 60(b) motion did both; her Withdrawal Claim sought to remedy a purported defect in the review process, while her Sentencing Claim directly challenged the validity of the criminal judgment under which she is imprisoned. Under *Winestock*, we must treat this motion as a successive habeas application, over which the district court had no jurisdiction. *See id.* at 205. The proper remedy, however, is not dismissal; instead, Reid must be given "an opportunity to elect between deleting the improper claims or having the entire motion treated as a successive application." *Id.* at 207. We therefore vacate the order denying Reid's Rule 60(b) motion and remand to allow her to make the required election.

If Reid chooses to withdraw her Sentencing Claim, then the district court may consider anew her request to withdraw her habeas application. Although we have held that this issue is sufficiently debatable to justify the issuance of a COA, we take no position on whether Reid is in fact entitled to Rule 60(b) relief.

V.

For the foregoing reasons, we hold that a COA is required for appeals from Rule 60(b) motions in habeas cases, and we grant a COA as to Reid's claim that the district court erred in denying her request to withdraw her habeas application. We further hold that the district court erred in failing to treat Reid's motion as a successive habeas application; we therefore vacate the district court order and remand to allow Reid to choose between withdrawing her improper claim or suffering dismissal or transfer of her motion.

*VACATED AND REMANDED*