**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-6878**

———————

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

MADISON DUANE MCRAE,

               Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:04-cr-00223-RJC-DCK-2; 3:08-cv-00219-RJC)

———————

Argued: January 28, 2015          Decided: July 13, 2015

———————

Before MOTZ, GREGORY, and WYNN, Circuit Judges.

———————

Reversed and remanded by published opinion. Judge Gregory wrote the majority opinion, in which Judge Wynn joined. Judge Wynn wrote a separate concurring opinion. Judge Motz wrote a dissenting opinion.

———————

**ARGUED:** Robert Leonard Littlehale, III, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, D.C., for Appellant. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** William Blaise Warren, Molissa H. Farber, Diana V. Valdivia, Nathaniel D. Cullerton, Washington, D.C., Alexandra R. Clark, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

GREGORY, Circuit Judge:

Appellant Madison Duane McRae was convicted of four drug-related charges on September 14, 2005. After an unsuccessful appeal and a pro se attempt to have his sentence vacated, corrected, or set aside under 28 U.S.C. § 2255, McRae filed a pro se motion with the district court entitled "Motion for Relief from Judgment 60(b)(1)(3)(6)." The district court dismissed the motion for lack of subject-matter jurisdiction, finding that it constituted an impermissible successive habeas petition rather than a proper Rule 60(b) motion. McRae appeals this judgment.

The threshold issue before us is whether we can review the district court's categorization of McRae's motion without first issuing a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B). We hold that recent Supreme Court jurisprudence has made clear that § 2253(c) does not apply in this particular situation. Because we find that McRae's motion constitutes a mixed Rule 60(b)/§ 2255 motion, we remand to the district court to afford McRae the opportunity to decide whether to abandon his improper claim or to proceed with a successive habeas petition.

2

**I.**

**A.**

In 2004, Immigration and Customs Enforcement ("ICE") Agent Blaine Crum began investigating McRae's co-defendant, Rodney Green, after he became suspicious of drug trafficking activity. On August 21, 2004, Agent Crum learned that Green and McRae had traveled to Jamaica, as had Green's connection Andrea Spears. Two other women, Atonia Bailey and Latia Harris, had flown to Jamaica as well. Although the travelers flew out of two different airports (Green and McRae from one and Spears, Harris, and Bailey from the other), all of their tickets had been purchased using cash at the Columbus, Ohio airport.

When Spears, Harris, and Bailey returned from Jamaica they were questioned at the Charlotte Douglas International Airport by customs agents, who seized cocaine and marijuana from Harris and Bailey. McRae and Green were pulled aside by customs agents at the Memphis International Airport for secondary examinations; Agent Crum sat in on their interviews.

After the interviews, Agent Crum called the Charlotte airport and learned that Bailey and Harris had been transporting controlled substances. Bailey had also identified McRae using a photograph. Based on this information, Agent Crum arrested McRae and Green. He obtained a search warrant for, among other things, the information in McRae's cell phone, and retrieved

3

McRae's text messages, list of contacts, and record of recent calls. Agent Crum learned that the number labeled "Tnia" was Bailey's, and that McRae and Green had contacted each other just before leaving for Jamaica.

In February 2005, McRae was charged with four drug-related offenses. At the ensuing trial, Green, Bailey, Harris, and Spears testified against McRae. According to Green, he began distributing cocaine to McRae in 2004 and later agreed to help McRae import cocaine from Jamaica. Green testified that, after he and McRae successfully imported a kilogram of cocaine in August 2004, Green and McRae arranged for Spears, Harris, and Bailey to travel to Jamaica. McRae purchased everyone's tickets, and Green bought 1.5 kilograms of cocaine while in Jamaica. Green also gave McRae Ace bandages and duct tape for strapping the cocaine onto Bailey and two smaller packages for Harris and Spears to insert into their vaginas.

According to Bailey, in mid-August 2004 McRae offered her $500 to go to Jamaica and "bring something back." J.A. 182. After initially agreeing Bailey changed her mind, but McRae said since they already had the tickets they could still go to Jamaica and "kick it." J.A. 183-84. Bailey testified that when she got out of the shower on their last morning in Jamaica her ticket and birth certificate were missing. McRae told her that

4

if she wanted to get home she would have to transport packages of cocaine, which she did.

Spears testified that she traveled to Jamaica with Green and a woman named Cheryl Turner in January 2004 and transported 500 Ecstasy pills to the United States. In the summer of 2004 Harris asked Spears to go back to Jamaica with Harris and Green. Spears initially declined, but agreed when Green told her this trip would not be like the first. According to Spears, on their last morning in Jamaica she got out of the shower and found a package of drugs lying on her clothes. After arguing with Green she inserted the package into her vagina, but she removed it before leaving.

According to Harris, she traveled to Jamaica at Green's invitation, and when she got out of the shower on their last morning there, a package of drugs was lying next to her clothes. Following Green's instructions, she inserted the package into her vagina.

Several law enforcement officers also testified at McRae's trial. Agent Crum testified that during McRae's interview at the airport, McRae said that he worked in real estate and that Green had paid for his trip to Jamaica. Agent Crum asked McRae if he could look through his cell phone. He found a contact labeled "Tnia," and asked McRae if that contact was Atonia Bailey; McRae denied that it was. At some point McRae withdrew

5

his consent for Agent Crum to search the phone, and Agent Crum did not go through the phone again until he obtained a warrant.

ICE Agent Robert Mensinger, who assisted Agent Crum with his investigation, testified about a conversation he had with McRae at the airport. According to Agent Mensinger, McRae asked whether he could do anything to help his situation. Agent Mensinger asked McRae if he had been advised of his rights, to which McRae responded, "Yeah, I know my rights." J.A. 572. Agent Mensinger did not provide McRae with an official Miranda form, but he did advise McRae of his right to remain silent and his right to an attorney. As Agent Mensinger started to leave the room, McRae began talking about the trip to Jamaica. According to Mensinger, McRae initially said that he had not seen Bailey for several weeks, but later changed his story and admitted to being with her as well as Spears, Harris, and Green in Jamaica. He stated that he had seen two kilograms of cocaine in the bungalow in Jamaica, and told Agent Mensinger about how Green had strapped the cocaine onto "the girls." J.A. 574-75.

McRae's counsel objected to both Agent Crum's and Agent Mensinger's testimony. As Agent Crum began testifying about his interview with Green and McRae at the airport, counsel asserted that there was no corroborative evidence of the statements allegedly made by McRae and no waiver-of-rights form, and moved for voir dire. The district court denied the motion, stating

6

that counsel could accomplish his goals on cross-examination. Similarly, counsel requested the opportunity to voir dire Agent Mensinger. The court denied the motion, but directed the government to lay a foundation to allow the court to determine whether there had been a violation of rights. Counsel had not moved to suppress testimony from either agent. Prior to jury deliberations, the court explained its denial of counsel's voir dire motions in greater detail. It noted that McRae's counsel had waived the right to a suppression hearing by failing to file a pre-trial motion to suppress, but found in the alternative that the testimony in question "was credible, the appropriate warnings were given, and . . . any statements made by the defendant were knowing and voluntary." J.A. 655-56.

**B.**

After a three-day trial, on September 14, 2005, a jury convicted McRae of four drug-related charges. On May 25, 2006, the district court sentenced McRae to 210 months of imprisonment for each of the four charges, to run concurrently. McRae appealed, but this Court affirmed his conviction and sentence. United States v. McRae, 235 F. App'x 968 (4th Cir. 2007) (per curiam) (unpublished). On May 12, 2008, McRae filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Among other things, McRae claimed ineffective assistance of trial and appellate counsel and prosecutorial

7

misconduct. On July 19, 2010, without holding an evidentiary hearing, the district court granted the government's motion for summary judgment. This Court subsequently held that McRae could not appeal absent a COA, which the Court declined to issue. United States v. McRae, 450 F. App'x 284 (4th Cir. 2011) (per curiam) (unpublished).

After filing unsuccessful petitions for rehearing and rehearing en banc, and a writ for certiorari, McRae filed a pro se motion entitled "Motion for Relief from Judgment 60(b)(1)(3)(6)." His motion highlighted five alleged errors in the district court's § 2255 proceedings: 1) the district court, relying on the government's memorandum, falsely stated that the court had not mentioned counsel's failure to move to suppress when denying counsel's motions for voir dire; 2) the district court mistakenly stated that McRae admitted to knowing Bailey; 3) the district court did not consider every statement made by McRae in determining whether his counsel was ineffective for failing to move to suppress; 4) the district court mistakenly attributed Agent Mensinger's testimony that McRae knew his rights to Agent Crum; and 5) the district court misquoted Agent Mensinger as telling McRae an attorney would be appointed for him if he could not afford one. The court dismissed McRae's Rule 60(b) motion for lack of subject-matter jurisdiction, holding that the motion was a successive § 2255 motion for which

8

he had failed to obtain preauthorization under 28 U.S.C. § 2244(b)(3), and declining to issue a COA. McRae timely appealed, and this Court appointed counsel to address the question "whether, in light of Reid v. Angelone, 369 F.3d 363 (4th Cir. 2004), and Gonzales v. Crosby, 545 U.S. 524 (2005), McRae's appeal of the district court's dismissal of his Rule 60(b) motion as an unauthorized successive § 2255 motion is subject to the certificate of appealability requirement."

## II.

On appeal, McRae argues that the district court erred in treating his motion as a successive habeas petition rather than a "mixed" Rule 60(b)/§ 2255 motion, and that this Court may review the district court's determination without first issuing a COA. "[O]ur review is de novo where a district court construes a motion as a successive § 2255 motion and dismisses it for failure to obtain prefiling authorization from a court of appeals." United States v. MacDonald, 641 F.3d 596, 609 (4th Cir. 2011).

Rule 60(b) allows a court to relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or

9

extrinsic), misrepresentation, or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or otherwise vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(b) applies to § 2255 proceedings, but only "to the extent that [it is] not inconsistent with" applicable statutory provisions and rules. Rules Governing Section 2255 Cases, Rule 12, 28 U.S.C. foll. § 2255. Therefore, a Rule 60(b) motion in a habeas proceeding that attacks "the substance of the federal court's resolution of a claim on the merits" is not a true Rule 60(b) motion, but rather a successive habeas petition. Gonzales, 545 U.S. at 531-32. A successive habeas petition may not be filed in district court without preauthorization from a court of appeals under § 2244(b)(3)(A). A Rule 60(b) motion that challenges "some defect in the integrity of the federal habeas proceedings," however, is a true Rule 60(b) motion, and is not subject to the preauthorization requirement. Id.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, a court of appeals may not review "the final order in a proceeding under section 2255" unless a circuit justice or judge issues a COA. 28 U.S.C.

10

§ 2253(c)(1)(B).[1] A judge may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." Id. This standard varies slightly depending on whether the district court denied the applicant's habeas petition on the merits or on procedural grounds. If the denial was on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). If, on the other hand, the denial was procedural, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. (emphasis added).

In Reid v. Angelone, this Court held that the § 2253(c) COA requirement applies to an order denying a Rule 60(b) motion in a habeas action.[2] 369 F.3d 363, 369 (4th Cir. 2004). The Court reached this conclusion by examining the plain language of § 2253(c). Id. at 367. First, the Court determined that

---

[1] An identical requirement applies to "the final order in a habeas corpus proceeding [under § 2254] in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A).

[2] Reid dealt with a § 2254 proceeding, but the analysis is applicable to § 2255 proceedings as well.

11

although § 2253(c) applies only to one order in any given habeas proceeding ("the final order"), "a single habeas action may embrace multiple habeas 'proceedings' . . . ." Id. at 367-68. Second, the Court found that a proceeding involving a Rule 60(b) motion is necessarily a proceeding distinct from the one giving rise to the underlying challenged judgment. Id. at 368. And finally, the Court reasoned that a Rule 60(b) proceeding challenging the judgment in a habeas proceeding is itself a "habeas corpus proceeding" for the purposes of § 2253(c). Id. at 369. After analyzing the text of the statute, the Reid Court also found that subjecting Rule 60(b) motions to the COA requirement is consistent with the policy concerns underlying the requirement. Id. at 369-70.

The Reid Court issued a COA, but then dismissed the petitioner's Rule 60(b) motion as an improper successive habeas petition. Id. at 374-75. In doing so, the Court acknowledged the apparent incongruity of granting a COA only to hold that the district court lacked jurisdiction. Id. at 374 n.7. However, the panel found itself to be constrained by the statutory text of the COA requirement, which does not include an explicit exception for "questions of subject-matter jurisdiction." Id., see also Jones v. Braxton, 392 F.3d 683, 688-89 (4th Cir. 2004) (holding that an order dismissing a habeas petition as an

12

unauthorized successive petition is subject to the COA requirement).

Subsequent Supreme Court cases have made clear that we need not accept this incongruity in every situation. Based on the Court's reasoning in Gonzales, 545 U.S. 524, and Harbison v. Bell, 556 U.S. 180 (2009), we hold that the COA requirement in § 2253(c) allows us to review, without first issuing a COA, an order dismissing a Rule 60(b) motion as an improper successive habeas petition.

In Gonzales, the Supreme Court considered whether Rule 60(b) motions in habeas cases "are subject to the additional restrictions that apply to 'second or successive' habeas corpus petitions" under AEDPA. 545 U.S. at 526; see also 28 U.S.C. § 2244(b). It concluded that "true" Rule 60(b) motions, motions that challenge "not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," should not be treated as successive habeas petitions. Id. at 531-33. Central to this holding is the principle that, in order to preserve the "unquestionably valid role" Rule 60(b) motions play in habeas cases, we must distinguish between true Rule 60(b) motions and successive habeas applications. See id. at 533-34.

Four years later, the Supreme Court held in Harbison that a habeas petitioner appealing the denial of a motion to enlarge

13

the authority of appointed counsel need not obtain a COA. 556 U.S. at 183. In so holding, the Court noted that § 2253(c)(1)(A)[3] "governs final orders that dispose of the merits of a habeas corpus proceeding -- a proceeding challenging the lawfulness of the petitioner's detention." Id. Because an order denying a motion to enlarge authority of counsel "is not such an order," the Court reasoned that the COA requirement did not apply. Id.

In the wake of Harbison, other circuits have questioned the continued validity of requiring a habeas petitioner to obtain a COA before appealing a denial of a Rule 60(b) motion. In Wilson v. Secretary Pennsylvania Department of Corrections, the Third Circuit noted that its precedent in Morris v. Horn, 187 F.3d 333 (3d Cir. 1999), applied the COA requirement to an appeal of a denial of a Rule 60(b) motion, but recognized that "the vitality of that decision is undermined somewhat by the Supreme Court's decision in Harbison v. Bell." 782 F.3d 110, 115 (3d Cir. 2015). And in Jones v. Ryan, the Ninth Circuit cited Harbison for the proposition that "[w]ere [the petitioner] appealing the

---

[3] Like the Fifth Circuit, "[w]e find no reason why the Harbison Court's reasoning would not be equally applicable to § 2253(c)(1)(B)." United States v. Fulton, 780 F.3d 683, 686 (5th Cir. 2015).

14

denial or dismissal of a valid Rule 60(b) motion, he may have had no need for a COA."  733 F.3d 825, 832 n.3 (9th Cir. 2013).[4]

The Gonzales Court explicitly left open the question whether orders denying Rule 60(b) motions in habeas cases are exempt from § 2253(c)'s COA requirement.[5]  545 U.S. at 535 & n.7. And Harbison certainly bears on that question, recognizing a link between the need for a COA and an order's effect on the merits of a habeas proceeding.  For our purposes today, however, we need not determine whether the COA requirement applies to all orders denying Rule 60(b) motions.  Our inquiry is much narrower:  whether we may address the district court's jurisdictional categorization of a Rule 60(b) motion as a successive habeas petition without first issuing a COA.

---

[4] At least one circuit excluded orders denying Rule 60(b) motions from the COA requirement prior to Harbison.  See Dunn v. Cockrell, 302 F.3d 491, 492 & n.1 (5th Cir. 2002).

[5] It was this Court's decision to issue a COA following a denial on the merits that the Supreme Court indicated might have been appropriate in Gonzalez.  Specifically, the Supreme Court stated that "[m]any Courts of Appeals have construed 28 U.S.C. § 2253 to impose an additional limitation on appellate review by requiring a habeas petitioner to obtain a COA as a prerequisite to appealing the denial of a Rule 60(b) motion."  545 U.S. 524, 535 (emphasis added).  Furthermore, the Gonzales Court did not endorse Reid's holding, but merely compared it favorably to the "near-absolute bar" imposed by the Eleventh Circuit.  See id. at 535 n.7 (noting that Reid's application of the COA requirement to Rule 60(b) motions is "a more plausible and effective screening requirement" (emphasis added)).

15

Gonzales mandates that we treat true Rule 60(b) motions differently from successive habeas petitions, and Harbison holds that only final orders with a sufficient nexus to the merits of a habeas petition trigger the COA requirement. In other words, Gonzales reveals the importance of distinguishing between Rule 60(b) motions and successive petitions, and Harbison opens the door for us to ensure that the district court does so properly. While a denial of a Rule 60(b) motion may be sufficiently connected to the merits of the underlying habeas proceeding, a dismissal is not. When a district court denies a Rule 60(b) motion on the merits, it necessarily considers the merits of the underlying habeas petition. Since a Rule 60(b) motion alleges illegality in the conduct of a proceeding, considering the merits of such a motion is, in and of itself, developing a nexus to the actual habeas proceeding itself, and thus to the merits of that proceeding.[6] The same cannot be said about a dismissal of a Rule 60(b) motion on jurisdictional grounds. No one can say right now whether McRae's habeas proceeding was with merit or without based on the district court's dismissal.

---

[6] For example, in a Rule 60(b) motion addressing the merits, if a petitioner alleged that his conviction was based on perjury committed by a testifying witness, that would call into question the validity of his initial sentencing. Therefore, if a district court denied that motion, it would have weighed the merits of the motion, found they were lacking, and therefore that the original habeas proceeding itself was valid.

16

A jurisdictional dismissal of a collateral attack on a habeas proceeding is so far removed from the merits of the underlying habeas petition that it cannot be said to be a "final order[] . . . dispos[ing] of the merits of a habeas corpus proceeding . . . challenging the lawfulness of the petitioner's detention." See Harbison, 556 U.S. at 183. We therefore hold that we need not issue a COA before determining whether the district court erred in dismissing McRae's purported Rule 60(b) motion as an unauthorized successive habeas petition.[7]

## III.

The parties agree that the district court erred in dismissing McRae's motion as an impermissible successive § 2255 petition. See Appellee's Br. 48-50; Appellant's Reply Br. 1. McRae argues, and the government agrees, that his first, second,

---

[7] The facts of the case before us do not require us to reexamine Reid in its entirety under Harbison and Gonzales. Rather, we recognize today an abrogation of only a small part of Reid's reasoning. In that case, the lower court denied the purported Rule 60(b) motion on the merits, and this Court raised the jurisdictional issue sua sponte after granting a COA. See 369 F.3d at 373-75. The petitioner's appeal challenged a type of order different from the one at issue here: an order addressing the merits of a Rule 60(b) motion, as opposed to an order dismissing a Rule 60(b) motion as a successive habeas application. Unless and until this Court concludes that Harbison makes the COA requirement inapplicable to denials of Rule 60(b) motions generally, Reid's reasoning remains almost entirely intact.

17

fourth, and fifth claims are properly categorized as Rule 60(b) claims challenging the collateral review process, whereas his third claim is a successive attack on his conviction over which the district court did not have jurisdiction. This Court has made clear that "[w]hen [a] motion presents claims subject to the requirements for successive applications as well as claims cognizable under Rule 60(b), the district court should afford the applicant an opportunity to elect between deleting the improper claims or having the entire motion treated as a successive application." United States v. Winestock, 340 F.3d 200, 207 (4th Cir. 2003). McRae was not given that opportunity here.

The government contends, however, that we should affirm the district court on other grounds. Specifically, it argues that 1) McRae's Rule 60(b) claims were untimely, and 2) he failed to make the requisite showing of extraordinary circumstances.[8]

Under Rule 60(c)(1), a Rule 60(b)(1), (2), or (3) motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). All four of McRae's 60(b) claims fall into these categories, but he filed his motion nearly 18 months after the

---

[8] This showing is required only for Rule 60(b)(6) claims. See Gonzales, 545 U.S. at 535; Aikens v. Ingram, 652 F.3d 496, 500 (4th Cir. 2011) (en banc).

18

district court denied his § 2255 motion. Therefore, the government argues that McRae's motion is time-barred. McRae correctly asserts, however, that this issue should be resolved by the district court in the first instance. In United States v. Blackstock, this Court declined to affirm the dismissal of a § 2255 petition on the alternate ground that the petition was time-barred. 513 F.3d 128, 133 (4th Cir. 2008). The panel, noting that "AEDPA's limitations period is an affirmative defense," held that "it would be improper . . . to affirm the dismissal . . . on timeliness grounds" where the petitioner "has had no opportunity to come forward with evidence that might justify the application of equitable tolling or otherwise establish that his claims are not time-barred." Id. Similarly, the Rule 60(b) one-year filing deadline is an affirmative defense. See Willis v. Jones, 329 F. App'x 7, 14 (6th Cir. 2009) (unpublished) (holding that "this Rule 60(b) time limit is an affirmative defense, not a jurisdictional bar").[9] Because the issue of timeliness was not raised below, McRae has not had an opportunity to make a case for timely filing. Therefore, the proper course of action is to remand.

---

[9] The court reasoned: "The Federal Rules, in and of themselves, do not alter the jurisdiction of the district court. And the Supreme Court has held that similar 'claim-processing rules' are not jurisdictional." Willis, 329 F. App'x at 14. (internal citations omitted).

19

Similarly, the merits of McRae's claims are best addressed by the district court in the first instance. Although appellate courts do sometimes proceed to the merits of miscategorized Rule 60(b) motions, see, e.g., Gonzales, 545 U.S. at 536, the Winestock rule counsels in favor of remand. 340 F.3d at 208-09; see also Reid, 369 F.3d at 375 (remanding and "tak[ing] no position on whether Reid is in fact entitled to Rule 60(b) relief"). At least one other Court of Appeals has taken this approach as well. See Cox v. Horn, 757 F.3d 113, 124 (3d Cir. 2014) ("The grant or denial of a Rule 60(b)(6) motion is an equitable matter left, in the first instance, to the discretion of a district court."). And as McRae points out, our deferential standard of review regarding Rule 60(b) motions recognizes the district court's superior position for evaluating the merits. See Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967) ("The disposition of motions made under Rule[] . . . 60(b) is a matter which lies largely within the discretion of the trial judge and his action is not lightly to be disturbed by an appellate court."); see also Std. Oil Co. of Cal. v. United States, 429 U.S. 17, 19 (1976) (noting that "the trial court is in a much better position to pass upon the issues presented in a motion pursuant to Rule 60(b)" (internal quotation marks omitted)).

For these reasons, the merits of McRae's 60(b) claims are best left to the district court on remand.

## IV.

We therefore reverse the judgment of the district court and remand for further proceedings.

REVERSED AND REMANDED

21

WYNN, Circuit Judge, concurring:

Not wholly unlike the issue we confronted in Blakely v. Wards, 738 F.3d 607, 617 (2013) (en banc), where the "nub of the majority's and dissent's disagreement [was] the term dismiss," today, we disagree about whether dismissals and denials can be conflated for purposes of Certificates of Appealability. Fittingly to this case, in Blakely our dissenting colleague viewed the word dismiss as having a very narrow and distinct definition "learned in the first year of law school." Id. at 626 (Motz, J., dissenting). That narrow definition could be overcome neither by "imprecise common usage" nor by "an overbroad dictionary definition." Id. Applying that sentiment here, there must be a distinction between "actual dismissals" and denials. Id. Otherwise, we run the risk of "improperly restrict[ing] access to the courts." Id. at 624. With great respect to the dissenting view, I must therefore agree with the majority opinion.

DIANA GRIBBON MOTZ, Circuit Judge, dissenting:

The majority holds that a habeas petitioner need not obtain a certificate of appealability (COA) before appealing a district court's "order denying [his] Rule 60(b) motion as an improper successive habeas petition." Because this conclusion runs counter to binding circuit precedent, I respectfully dissent.

We only have jurisdiction to consider an appeal from a "final order in a proceeding under" 28 U.S.C. § 2255 if "a circuit justice or judge" issues a COA. See 28 U.S.C. § 2253(c)(1). In Reid v. Angelone, 369 F.3d 363, 369 (4th Cir. 2004), we held that a district court's denial of a habeas petitioner's Rule 60(b) motion constitutes such an order, and thus we lack appellate jurisdiction to review it absent a COA. In this case, after dismissing McRae's Rule 60(b) motion as a successive § 2255 petition, the district court declined to issue a COA. And no member of this court has issued a COA.[1] Under Reid, we therefore lack jurisdiction to hear McRae's appeal and so should dismiss it.

The majority eschews this straightforward application of our precedent. My colleagues contend that two recent Supreme

---

[1] There is good reason for this. McRae plainly fails to qualify for a COA for he cannot make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Court cases combine to abrogate -- at least in part -- our holding in Reid. I cannot agree.

First, the majority relies on Gonzalez v. Crosby, 545 U.S. 524 (2005), which did not even involve a COA. There, the Supreme Court considered the interplay between Rule 60(b) motions and the 28 U.S.C. § 2244(b)(3) requirement that habeas petitioners obtain authorization from a court of appeals before filing a successive habeas petition. See id. at 530-36. The Gonzalez Court held that if a Rule 60(b) motion "attacks . . . the integrity of the federal habeas proceedings," rather than the outcome of those proceedings, it is not "a habeas corpus application" and does not require pre-filing authorization. Id. at 532-33. Thus, Gonzalez simply empowers a petitioner to file a challenge to the integrity of his habeas proceedings in a Rule 60(b) motion without obtaining pre-filing authorization from an appellate court. Gonzalez does not empower a petitioner to appeal the denial of such a challenge without obtaining a COA. The majority elides the distinction between the two forms of authorization, notwithstanding their separate statutory and analytical bases.

Whether a petitioner must first obtain a COA to appeal a Rule 60(b) denial is, in fact, a question the Gonzalez Court expressly declined to resolve. Id. at 535 n.7. But, citing our decision in Reid, the Court acknowledged in dicta that "[m]any

24

Courts of Appeals" impose such a COA requirement.  Id. at 535. And the Court even intimated that this approach was the correct one.   See id. at 535 n.7 (noting COA requirement for 60(b) appeals is "a more plausible and effective screening requirement, with sounder basis in the statute" than requiring pre-filing authorization for 60(b) motions in the first instance).   Far from undercutting Reid's logic then, Gonzalez actually all but endorses it.

Accordingly, the majority's heavy reliance on Gonzalez is misplaced.  The majority correctly notes that Gonzalez requires "that we treat true Rule 60(b) motions differently from successive habeas petitions."  Indeed we must.  And a district court that fails to do so commits error.  But that conclusion does not answer the question now before us, i.e., whether a petitioner denied Rule 60(b) relief can, absent a COA, obtain appellate review.   Reid held that we lack jurisdiction to entertain such an appeal and Gonzalez does not abrogate that holding.

The other case on which the majority relies, Harbison v. Bell, 556 U.S. 180 (2009), did consider the COA provision.  The Harbison Court held a COA "not necessary" to appeal an order denying a request for counsel, reasoning that the COA provision applies only to "final orders that dispose of the merits of a habeas corpus proceeding."  Id. at 183.  The majority concludes

25

that "[a] jurisdictional dismissal" of a Rule 60(b) motion, like the request for counsel in Harbison, "is so far removed from the merits of the underlying habeas petition" that it, too, does not "dispose of the merits."

That conclusion is, in my view, simply wrong. A final order that does not "consider[] the merits" of a habeas petition can certainly dispose of the merits. A Rule 60(b) motion "to reopen proceedings" seeks to put at issue claims that have been resolved by final judgment. United States v. MacDonald, 641 F.3d 596, 603 (4th Cir. 2011); see also Fed. R. Civ. P. 60(b). An order foreclosing such relief clearly "disposes of the merits" of claims the movant sought to relitigate. An order denying a request for counsel, like that at issue in Harbison, by contrast, leaves the merits of the underlying claims entirely unaffected. The majority apparently believes that only by "developing a nexus . . . to the merits" can an order dispose of the merits. Nothing in Harbison suggests that the Supreme Court intended to alter the plain meaning of the word "dispose" in this manner.

Nor does anything in Harbison indicate that the Court there intended to exempt an order dismissing a Rule 60(b) motion from the COA requirement. After all, a mere four years earlier, the Court had noted in Gonzalez that "[m]any Courts of Appeals . . . requir[e] a habeas petitioner to obtain a COA as a prerequisite

26

to appealing the denial of a Rule 60(b) motion." 545 U.S. at 535. The Harbison Court made no reference to Rule 60(b), let alone suggested that it intended to partially abrogate what it had so recently recognized as a widespread, "plausible and effective" practice. Id. at 535 n.7.

The majority's assertion that it abrogates "only a small part of Reid's reasoning" gives me little comfort. The majority does limit its holding to an "order dismissing a Rule 60(b) motion as a successive habeas application," leaving for another day whether an order denying a Rule 60(b) motion continues to require a COA. But we have never treated Rule 60(b) denials and Rule 60(b) dismissals differently for COA purposes. See Reid, 369 F.3d at 375 (requiring COA for all "appeals from Rule 60(b) motions in habeas cases"). This is, of course, because the COA provision broadly covers "final order[s]" in habeas proceedings. 28 U.S.C. § 2253(c)(1). A jurisdictional dismissal is no less a "final order" than a denial on the merits. Thus, the majority's purported preservation of a portion of Reid rests on decidedly shaky ground.

Moreover, if the majority's assertedly "small" holding did remain good law, it would yield a very strange result. Under this regime, we would still require a COA to appeal the denial of a Rule 60(b) motion on its merits, see Reid, 369 F.3d at 369, and to appeal the dismissal of a § 2255 motion as successive,

27

see Jones v. Braxton, 392 F.3d 683, 688 (4th Cir. 2004).  But when a district court dismisses a Rule 60(b) motion as actually a successive § 2255 motion in Rule 60(b) clothing, no COA would be necessary.  This seems to me to make little sense.

Though I believe neither Gonzalez nor Harbison justifies the result reached by the majority, I am not without sympathy for McRae.  As the Government concedes, the district court erred in not permitting him to separate his "true" Rule 60(b) claims from those that were successive habeas claims.  See Appellee's Br. 49-50.  But the purpose of a COA is "to prevent frivolous cases from clogging appellate dockets and to promote finality." United States v. Vargas, 393 F.3d 172, 174 (D.C. Cir. 2004).  To that end, Congress has stripped courts of appeals of jurisdiction in habeas cases where the lack of a constitutional injury is plain.  See Reid, 369 F.3d at 371.

This is such a case.  Binding circuit precedent thus requires dismissal of this appeal.[2]  Because I believe the Supreme Court has not overruled that precedent, I must respectfully dissent.

---

[2] The concurrence's support of my dissent in Blakely v. Wards, 738 F.3d 607 (2013) (en banc), is gratifying.  But even if my reasoning there applied in the very different context here, we could not follow it given that binding circuit precedent -- the en banc majority in Blakely -- rejected my rationale.